DETERMINED IN

# THE SUPREME COURT

OF

# OREGON.

Argued January 30, decided February 25, rehearing denied March 25, Motion to Retax Costs denied April 22, 1913.

## PORTER v. O'DONOVAN.*

(130 Pac. 393.)

**Deeds—Fraud—Evidence.**

1. Evidence *held* to justify a finding that a deed was procured by fraud.

[As to deeds void for fraud at law, see note in 93 Am. Dec. 596.]

**Principal and Agent—Fraud—Effect.**

2. Where a grantee obtained the benefit of a deed procured by his agent's fraud practiced on the grantor, he was chargeable with the fraud whether he knew or participated in it or not, and the deed must be set aside as against him.

[Liability of principal for agent's fraud as dependent upon whether fraud committed for principal, see note in Ann. Cas. 1912C, 907.]

**Fraud—Evidence—Circumstantial Evidence.**

3. Fraud need not be shown by direct evidence, but may be established by circumstantial evidence and by inferences like any other fact.

[As to what is sufficient proof of fraud, see note in 65 Am. Dec. 157.]

**Deeds—Validity—Fraud—Effect.**

4. Where a grantee obtaining a conveyance through his fraud practiced on the grantor was induced by the fraud of a third person, who knew of the grantor's rights, to convey the property to another chargeable with knowledge of the facts, the latter conveyance was tainted with fraud as against the original grantor, who could recover the premises so far as the same had not been passed to an innocent purchaser.

---

*As to the jurisdiction of equity over suits affecting real property in another state or country, see notes in 55 Am. St. Rep. 774, 23 L. R. A. (N. S.) 924, and 27 L. R. A. (N. S.) 420.—REPORTER.

Cancellation of Instruments—Jurisdiction of Subject Matter—Suit to Set Aside Deed.

5. The court, in a suit to set aside conveyances of described real estate situated in the state on the ground of fraud, has no jurisdiction to order a party to the suit to convey to another party real estate in a sister state not in issue.

Cancellation of Instruments—Cancellation of Deed—Relief.

6. Where a conveyance was set aside on the ground of fraud practiced on the grantor except as to a tract conveyed by the fraudulent grantee to an innocent purchaser, the court must compel the grantee to account for the value of the tract sold and compel the grantor to account for the partial payments made by the grantee.

[As to right of grantor to cancellation of deed on account of grantee's fraud, see note in Ann. Cas. 1912A, 405.]

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by L. L. Porter against C. O'Donovan, Katherine M. Dwyer, A. J. Dwyer and E. P. McCarthy. O'Donovan was the owner of the southwest quarter, the west half of the southeast quarter, the southwest quarter of the northeast quarter, and the south half of the southeast quarter of the northeast quarter of section 10, in township 39 south, range 19 east of the Willamette meridian, containing 300 acres of land, situate in Lake County, Oregon; lot 10, in block 2, Collinge addition to Portland; and the northeast quarter of the southwest quarter of the D. L. C. of John Stephenson, claim No. 59, in township 3 south, range 4 east of the Willamette meridian, in Clackamas County, Oregon, containing 20 acres. The plaintiff, Porter, was the owner of tracts 3, 4 and 15 in the town of Pinehurst in the county of Clackamas, and lots 5, 6, 7, and 8 in block 6, Peck's addition to East Portland. On the 2d day of October, 1909, the defendant O'Donovan conveyed to plaintiff the above-described 300 acres of land in Lake County, in exchange for plaintiff's tracts and lots above described; and, as an inducement to plaintiff to make such exchange, O'Donovan represented to plaintiff that said 300 acres was arid, but that it was

susceptible of being irrigated at a cost of $25 per acre, from a certain ditch then being constructed by the Oregon Valley Land Company, which representations, plaintiff alleges, were false, and fraudulently made; that after said exchange plaintiff obtained information that but 12 acres of said 300 were under said ditch, and demanded of O'Donovan that he rescind the trade and reconvey to plaintiff the lands so conveyed to him by plaintiff, on the ground of the fraudulent representations made to him by O'Donovan. About the time plaintiff was so demanding of O'Donovan such a reconveyance, namely, on about March 21, 1910, with the exception of lots 5 and 6, of said block 6, which he had previously conveyed away, O'Donovan conveyed to one M. McCarthy all of said property received by him from plaintiff, without consideration, the deed for which was not delivered, but was placed on record by O'Donovan. He thereafter attempted to procure a reconveyance of said lands to himself by a fictitious M. McCarthy, and on March 31, 1910, with the above-mentioned exception, conveyed the property so received by him from plaintiff, together with the 20 acres in Clackamas County, and lot 10 of block 2, Collinge addition, previously owned by him, to Katherine M. Dwyer.

On April 2, 1910, plaintiff commenced this suit against all the defendants, alleging that all of said conveyances were fraudulent and void, and asking that defendants be required to reconvey to him said property so conveyed by him to O'Donovan, or to pay the value of the portions thereof conveyed by them to innocent purchasers. Defendant Katherine M. Dwyer separately answered to the complaint, denying any information or knowledge sufficient to form a belief as to its truth, and therefore denied the same, and alleged affirmatively that she purchased the property from O'Donovan in good faith, without any knowledge of any fraud of O'Donovan, for full value, namely, $5,000.

Defendant E. P. McCarthy, who is not related to the
M. McCarthy above named, by answer denies the alle-
gations of the complaint.   Defendant, O'Donovan, files
his answer to the complaint and a cross-complaint
against his codefendants, charging that his codefend-
ants conspired to cheat and defraud him out of all his
property, and alleges at length their efforts to frighten
him by reporting to him that the plaintiff was seeking
to prosecute him for false representations made by
him to plaintiff, and in procuring the pretended deed
from M. McCarthy, and to attach all his property; that,
acting under the fear of arrest and attachment of his
property, and at the dictation of his codefendants, and
to save his property to himself, he conveyed it to
Katherine M. Dwyer, for the consideration of $5,000,
of which sum only $350 was paid; that Katherine M.
Dwyer gave him two notes, one for $1,500 and the other
for $1,750, when in fact he thought he was getting notes
for $4,500, and $500 in cash; that thereupon a ticket
was purchased for him by McCarthy, and he was placed
on the Southern Pacific train for San Francisco, at 12
o'clock at night, and instructed to use an assumed
name, John J. Collins, and to go to T. Cavanaugh, a
friend and former partner of E. P. McCarthy, where
he stayed for some time; that in attempting to collect
the $1,500 note, through Cavanaugh, he received only
$1,000.   The other note has not been paid.   During
his stay in San Francisco, McCarthy wrote him many
letters containing ''scare news'' of the sheriff being
after him.   Katherine M. Dwyer, by her answer to the
cross-complaint, denies its allegations.   McCarthy and
A. J. Dwyer separately answer the cross-complaint by
general denials.   The Circuit Court heard the evidence,
and made findings sustaining plaintiff's contention
against O'Donovan, and in favor of O'Donovan against
his codefendants, and on August 4, 1911, rendered a de-
cree canceling the deeds of O'Donovan to Katherine

M. Dwyer, except as to lot 10, of block 2, Collinge addition to Portland, which Katherine M. Dwyer had conveyed to an innocent purchaser, and gave judgment in favor of O'Donovan against his codefendants for the sum of $875, the price received by them therefor. A. J. and Katherine M. Dwyer appealed from said decree. Defendant McCarthy also appealed. Katherine M. Dwyer is the wife of A. J. Dwyer and sister of E. P. McCarthy, and until about the last of February, 1910, E. P. McCarthy and A. J. Dwyer were partners under the firm name of the McCarthy Company, and they were still occupying the same office rooms.

MODIFIED AND AFFIRMED.

For appellants, Katherine M. and A. J. Dwyer, there was a brief over the names of *Messrs. Westbrook & Westbrook, Mr. John F. Logan* and *Mr. Isam N. Smith,* with an oral argument by *J. W. Westbrook.*

For appellant, E. P. McCarthy, there was a brief, with oral arguments by *Messrs. Christopherson & Matthews.*

For respondent, L. L. Porter, there was a brief and an oral argument by *Mr. Charles W. Fulton.*

For respondent, C. O'Donovan, there was a brief and an oral argument by *Mr. J. F. Sedgwick.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. It appears that O'Donovan is a man of weak mind and easily influenced; that he has been in this country only five or six years, and is a longshoreman by occupation. He was in fear of some legal proceedings being brought against him by the plaintiff, Porter, and confided to one German and to defendant E. P. McCarthy the story of his troubles with Porter, his fear

of litigation, and the condition of the title to his property, which he had conveyed to M. McCarthy. They immediately began to work on his fears and to take advantage of his confidence, and induced him to have a deed made by a person whose name they pretended was M. McCarthy, conveying to him the property standing on the record in the name of M. McCarthy. They represented to him that Porter would sue him, attach his property, and prosecute him criminally on account of the warranty in his deed to Porter, and because of the forged deed in the name of M. McCarthy; that a warrant of arrest had already been issued for him; and that the sheriff was looking for him to arrest him. On account of his fear of these proceedings, they induced him to put the property out of his name and leave the state. By reason of said influence he did execute deeds for the Porter property as well as for his other property to Katherine M. Dwyer, for the alleged consideration of $5,000, and before the delivery of the deeds or the payment of the price McCarthy sent Green and Moreland, who seemed to be acting on behalf of McCarthy, and O'Donovan, to look at the property. When O'Donovan was returning to the city, McCarthy met him at the Golf Links, and told him that the sheriff was after him, and to wait there until the crowd had gone away. Then they went to Fulton and remained until dark, after which they went to the Lenox Hotel, and stayed in a room until 10 o'clock, when McCarthy went to the depot and secured a ticket for San Francisco in the name of John J. Collins, and told O'Donovan that he should go by that name. At midnight McCarthy put him on the train and directed him to go to T. Cavanaugh, in San Francisco, a friend and former partner of McCarthy, and delivered to him $350 and the two notes hereinbefore mentioned. These circumstances are set forth in the cross-complaint at great length, and the evidence upon

these matters is very voluminous. When O'Donovan attempted to collect the $1,500 note, he paid $100 to Cavanaugh to go to Portland to see about his affairs, and to collect the note, which Cavanaugh induced O'Donovan to indorse to him to avoid attachment by Porter. When Cavanaugh returned from Portland, he told O'Donovan that the sheriff was in McCarthy's office twice while he was there. Cavanaugh collected the $1,500 note, paid $100 to his attorney, and, retaining $400 himself, turned over to O'Donovan $1,000. In September, 1910, McCarthy went to San Francisco to see O'Donovan, and he and Cavanaugh told O'Donovan that, if he did not give up the $1,750 note, they would throw up the case and tell the sheriff about him; and thereby compelled him to surrender up the note, which they still retain.

It needs no argument to show that the whole transaction is a rank fraud. Cavanaugh evidently was aiding McCarthy to keep O'Donovan in fear and prevent him from returning to Oregon and to get his property away from him. However, the defense of Katherine M. Dwyer is that she is an innocent purchaser for value, without any knowledge of or participation in the fraud of McCarthy. She took no part in making the purchase of the property and did not see or talk with O'Donovan until the time she signed the notes; and A. J. Dwyer says that he bought the property with his wife's money. At the time of the purchase there seems to have been little or no talk of the terms of the sale. They had been arranged beforehand. A. J. Dwyer was the agent of his wife, Katherine, in the part he took in the purchase, and McCarthy was the person who made the terms of the sale and consummated it. Dwyer testifies that he and O'Donovan had but little talk; that O'Donovan came to his desk and offered him the property for $5,000. It does not appear that O'Donovan ever told him what property it

was, or where, but McCarthy informed A. J. Dwyer on the evening of March 30th that the O'Donovan property would be a good purchase. Dwyer had McCarthy get an option on the property, by the terms of which O'Donovan agreed to sell and convey the property to "The McCarthy Company," if taken before April 2, 1910, for $5,000 cash net to him. The next day Dwyer and his wife met McCarthy and O'Donovan at Dwyer's office, at which time there seems to have been no talk as to the terms of the sale, but Mrs. Dwyer signed the two notes, the payment of which was unsecured. A. J. Dwyer produced $500 in money, and the money and notes were delivered to McCarthy, who was directed to complete the transaction, and McCarthy went off with O'Donovan to make out the deeds. Dwyer admits that it was rather a strange transaction. He denied having any talk with O'Donovan about the property, but, when asked if he was acquainted with the value of the property, he said that in a general way he was; that from general inquiries made at the time, etc., he thought the property a good purchase at that price. He also admits that the only thing he knew about the Shamrock Investment Company was that a corporation was to be formed by McCarthy, and that O'Donovan was going to put his property into the company. Dwyer testifies that he left the completion of the transaction to McCarthy. The fact of the former business relations between A. J. Dwyer and McCarthy, and Mrs. Dwyer being McCarthy's sister, the fact that A. J. Dwyer and McCarthy occupied the same office together, and that McCarthy still used the firm name of the McCarthy Company, together with the other circumstances, tended to show that A. J. Dwyer was in touch with the whole transaction, and to corroborate O'Donovan in his testimony to that effect. When McCarthy found out that Porter had located O'Donovan, he became sufficiently interested to take a trip to California

to see O'Donovan in order to guard the interests of the Dwyers, and he was again acting for the Dwyers when he brought back the $1,750 note. Dwyer says McCarthy took it upon himself to get the note back, with the promise from O'Donovan that O'Donovan would reimburse Dwyer for anything that he would be out in this suit. The proof tends strongly to bring home to A. J. Dwyer knowledge of the facts that were in the knowledge of McCarthy, as McCarthy was the actual agent of A. J. Dwyer and his wife in the purchase, and his acts in connection therewith were their acts. The evidence shows that O'Donovan did not sell the property to Katherine M. Dwyer for $3,750. He did not agree to take notes, but was to have $5,000 in cash, and he did not consent to the sale; that was forced upon him, and their minds did not meet on the attempted purchase. Even the $500 which Dwyer admits was to be paid to O'Donovan was not so paid, and delivery of it to Dwyer's agent, McCarthy, was not payment to O'Donovan.

2. The option was obtained only by fraud and by keeping O'Donovan in fear. This was done by Dwyer's agent, and Dwyer is chargeable with it, whether or not he knew of or participated in it. Dwyer cannot be allowed to benefit by so rank a transaction, known to and accomplished by his agent.

3. Contention is made in the brief of defendant that there can be no presumption of fraud, but it is said in *Williamson* v. *North Pac. L. Co.,* 42 Or. 160 (70 Pac. 390): "Fraud is a question of fact, but need not be shown by positive evidence, as this can seldom be done. It is generally proved by circumstantial evidence, and may be established by inference like any other disputed fact." In the case of *Phipps* v. *Willis,* 53 Or. 195 (96 Pac. 868, 18 Ann. Cas. 119), it is said: "Nor is direct and positive proof essential to the establishment of fraud. It is always permissible to prove it by any cir-

cumstances from which it may follow as a legitimate inference; this class of evidence in many instances being the only proof available": See, also, *Kabat* v. *Moore,* 48 Or. 198 (85 Pac. 509).

4. All that was done by McCarthy was with knowledge of plaintiff's rights. O'Donovan's relations with the plaintiff were the foundation of McCarthy's power over O'Donovan, and his knowledge thereof affects the purchase by Dwyer and his wife, and taints it with the fraud as to plaintiff also.

5. So much of the decree of the Circuit Court as required O'Donovan to convey to Katherine M. Dwyer the flats in California, and which relates to matters that were not in issue was beyond the jurisdiction of that court, and the decree will be modified in relation thereto. The identity of the flats is not disclosed, nor is it shown what amount of money was invested in them, nor whether they are subject to deferred payments or to forfeiture for nonpayment.

6. The conveyances by O'Donovan to Katherine M. Dwyer should be set aside, except as to lot 10, block 2, Collinge addition to Portland, because they were obtained through fraud and fear; but, as Katherine M. Dwyer has sold said lot 10 of block 2 to an innocent purchaser, the title thereto will not be disturbed. The defendants, the Dwyers, will be required to reconvey to O'Donovan tracts 3, 4, and 15 in the town of Pinehurst, Clackamas County, Oregon, lots 7 and 8, in block 6, Peck's addition to East Portland, and the northeast quarter of the southwest quarter of the D. L. C. of John Stephenson, in township 3 south, range 4 east of the Willamette meridian; that the defendants A. J. Dwyer, Katherine M. Dwyer, and E. P. McCarthy account to O'Donovan for the $875 received by them for said lot 10, block 2; that O'Donovan repay to Katherine M. Dwyer the $350 received by him from McCarthy on account of Katherine M. Dwyer, and the

$1,000 received by him on the $1,500 note, less the said $875, namely, $475, with interest thereon from October 1, 1910, and until the same be repaid it shall be decreed to be a lien on the northeast quarter of the southwest quarter of the D. L. C. of John Stephenson, in Clackamas County.

The decree of the Circuit Court as to the rights of plaintiff and O'Donovan between themselves, having been made upon stipulation, is affirmed.

MODIFIED AND AFFIRMED.