On the merits, argued January 19, decided January 27, 1914.

## CLOUGH v. DAWSON.*

(133 Pac. 345; 138 Pac. 233.)

**Appeal and Error—Record—Jurisdiction of Supreme Court.**

1. A record including certified copies of the notice of appeal, the undertaking therefor, and the decree confers jurisdiction of the cause upon this court.

---

*The question of the degree of certainty necessary to establish fraud in a civil action is discussed in a note in 33 L. R. A. (N. S.) 836.          REPORTER.

**Appeal and Error—Motion for Dismissal—Sufficiency of Testimony Included in Transcript.**

2. Whether or not sufficient testimony has been included in the transcript to authorize a review of the decree, cannot be determined upon a motion to dismiss the appeal.

**Fraud—Evidence—Weight and Sufficiency.**

3. Fraud is a question of fact, and is provable by circumstantial evidence or by inference; direct and positive proof not being essential.

[As to what is sufficient proof of fraud, see note in 65 Am. Dec. 157.]

**Principal and Agent—Evidence—Weight and Sufficiency.**

4. In a suit to cancel an exchange of real estate, evidence *held* to show that one of the defendants, who claims to have been simply a witness to the transaction, was in fact the principal, and another, who made the false representations to plaintiffs, was his agent.

**Trusts—Evidence—Burden of Proof.**

5. Every fiduciary relation implies superiority of one party over the other, and equity presumes against the validity of every transaction in which the superior party obtains a benefit, and places on him the burden of showing affirmative compliance with equitable requirements.

[As to liability of principal for fraud of agent dependent on whether fraud is committed for benefit of principal, see note in Ann. Cas. 1913B, 829.]

**Trusts—Constructive Trusts—Property Obtained by Fraud.**

6. Where one obtained land from plaintiffs by fraud, a defendant who negotiated with third parties an exchange of the land for other land of which he afterward received a deed was not a *bona fide* purchaser, and a constructive trust was properly impressed on the land so obtained in favor of plaintiffs.

**Principal and Agent—Liability for Acts of Agent—Fraud.**

7. A principal is chargeable with fraud practiced by the agent, whether she knew of it or not, since she cannot ratify and obtain the benefit of the deal without assuming its burdens.

## On Motion to Dismiss.

From Multnomah: JOHN P. KAVANAUGH, Judge.

This is a suit by Charles Clough and Addie Clough, his wife, against V. J. Dawson and Rose Dawson, his wife, Hugh McGovern and Lenora D. Miller. There was a decree for plaintiffs and defendants appeal.

Respondents file motion to dismiss appeal.

MOTION DENIED.

*Mr. H. K. Sargent, Mr. Oliver M. Hickey* and *Mr. Frank Swope,* for the motion.

*Mr. Joseph E.* and *Gilbert L. Hedges, contra.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is a motion to dismiss an appeal based on the ground that the transcript does not contain all the testimony given at the trial.

1, 2. The record before us includes certified copies of the notice of appeal, the undertaking therefor, and the decree that was given, thereby conferring upon this court jurisdiction of the cause. Whether or not sufficient testimony has been included in the transcript to authorize a review of the decree cannot be determined in this primary proceeding.

The motion to dismiss appeal is therefore denied.

MOTION DENIED.

---

Decided January 27, 1914.

ON THE MERITS.

(138 Pac. 233.)

Statement by MR. JUSTICE BEAN.

This is a suit to rescind a contract for the exchange of real estate on the ground of fraud, and for a conveyance to plaintiffs of a portion of that realty and certain other land received by defendants in exchange for the remainder of plaintiffs' properties. The Circuit Court rendered a decree in favor of plaintiffs, from which defendants Hugh McGovern and Lenora D. Miller appeal.

Plaintiffs allege that on or about the 1st of February, 1911, the defendants conspired, confederated

and associated themselves together to cheat, wrong and defraud plaintiffs, and to ·secure from them the real estate described in the complaint.    Defendants V. J. Dawson and Rose Dawson, his wife, made default, and have left the country.    Defendants McGovern and Lenora D. Miller answered, denying the material allegations of the complaint.                    AFFIRMED.

For appellants there was a brief, with oral arguments by *Mr. Joseph E. Hedges* and *Mr. Gilbert L. Hedges.*

For respondents there was a brief, with oral arguments by *Mr. H. K. Sargent, Mr. Oliver M. Hickey* and *Mr. Frank Swope.*

MR. JUSTICE BEAN delivered the opinion of the court.

It appears from the record that in February, 1911, plaintiffs were the owners of 15.70 acres of land near Newberg, Yamhill County, Oregon, particularly described in the complaint, of the value of about $6,000; and that they also owned an equitable interest, amounting to $1,000, in lot A, first addition to Jennings Lodge, in Clackamas County, Oregon, where they resided. Being about 66 years old and in poor health, plaintiffs were advised by their physicians to go to California to live.    Defendant McGovern was then in the grocery business at Jennings Lodge; the business being conducted in the name of L. D. Miller, who is now his wife.    The plaintiffs traded at McGovern's store, and had implicit confidence in him.    Mrs. Clough told him and others that if they could dispose of their property they would go to California.    Mr. McGovern informed her that he thought he could find someone to take the same.    One A. W. Baker, of California, had listed with the E. Herbert Poe Company, a real estate firm of

Red Bluff, California, some property for sale at $1,900, which was situated in Tehama County, in that state. The Poe Company advertised this tract for sale as number 25. In answer to this advertisement, the company received a typewritten letter from one L. D. Miller, of Jennings Lodge, Oregon, inquiring in regard to this property as to the description, location, and terms. The Poe Company wrote to "Mr. L. D. Miller" on March 1, 1911, giving a general description of the tract, and stating: "The title of this place is the best. Will give abstract to date. The best terms that can be had is $900 cash, balance in three years in equal parts, with interest at 7%. * * " To this letter they received the following reply:

"Portland, Oregon, March 7–8, 1911.
"E. Herbert Poe Company, Red Bluff, Calif.:
"Your terms on number 25 in letter to Mr. Miller of March 1, accepted. Make deed to Chas. Clough, and forward with abstract to date to Hartman & Thompson, bankers, Portland, Oregon. Will examine title and pay money to bank if satisfactory. $900 cash, balance three equal yearly payments, 7%.
"M. D. HOBBS REALTY COMPANY."

The plaintiffs knew nothing about this correspondence. About February 20, 1911, defendant McGovern introduced defendant V. J. Dawson to plaintiffs as a close friend of his who had property in California to trade for Oregon property. Dawson falsely represented to plaintiffs that he had 12 acres of land three miles from Red Bluff, in Tehama County, California, a beautiful piece of agricultural and fruit land, all of which could be irrigated, 2 acres of Bartlett pears that produced a crop worth $400 the year before, 40 orange trees, about the same number of fig trees, one full-bearing large walnut tree, berries of all descriptions, 4 acres of peaches, prunes, and cherries, 6 acres

of alfalfa, producing two tons to the acre, from which four or five crops could be cut in a season, one large four-room modern house with cellar and large porch, shaded with two cherry trees, one large barn and outbuildings; that the place was all fenced with a good substantial fence, was free from encumbrance, and was of the value of $7,000; and stated that if his wife, Rose Dawson, could live in that locality he would not take $7,500 for the place, and offered to exchange the same for plaintiffs' properties, agreeing to give them $200 as expense money. McGovern told the plaintiffs that they could rely upon what Dawson said; that he had been acquainted with him for a long time. Dawson told them that it would be throwing away money to go to California to examine the land. The plaintiffs, relying upon these representations, and believing them to be true without examining the California real estate, accepted the offer, and about March 14, 1911, went to Newberg in company with McGovern and Dawson and executed a warranty deed, conveying their Newberg tract of 15.70 acres, at the direction of defendants, to Rose Dawson, depositing the deed in escrow with the defendant Hugh McGovern, to be delivered by him to defendants V. J. Dawson and Rose Dawson upon their executing a good warranty deed conveying to plaintiffs, free from encumbrance, the real property in California. The plaintiffs also assigned their interest in the Jennings Lodge property to Rose Dawson. It was understood by them that, if upon their arrival in Tehama County, California, the real estate proved to be as represented, the deed should then be delivered to Dawson. McGovern, without the consent of plaintiffs, caused the deed to be recorded in Yamhill County, Oregon, May 9, 1911. On April 29, 1911, Dawson informed the plaintiffs that there was a mortgage on the California property, and

that, in order to release the same, it would be necessary for them to sign some papers. Upon the advice of McGovern, the plaintiffs on that date executed a mortgage upon the California property in favor of Baker for the sum of $1,000. The notes were dated March 8, 1911, and due $330 in one year, $335 in two years, and $335 in three years, from the date thereof. It is clear from the evidence that the plaintiffs did not understand the purport of this mortgage, and relied upon the advice of defendant McGovern, who was present and told them to sign the same.

McGovern traded 10.70 acres of the Newberg tract to Paulus D. Newell and Laura Newell for a half interest in 40 acres of land in Tillamook County, described in the record, and informed Newell that the deed therefor would come from Dawson. This deed was executed by Rose Dawson and V. J. Dawson. The Dawsons also deeded the remaining 5 acres of the Newberg tract to Lenora D. Miller. On May 24, 1911, the plaintiffs journeyed to Red Bluff, Tehama County, California. About 15 minutes before their departure, the deed of the California property from Baker was delivered to them. Upon their arrival they found that the California property had been grossly misrepresented, and that it was worth no more than $1,800, being subject to a $1,000 mortgage; that Dawson had never seen the property; that a portion of the land was in the bed of a creek, consisting of gravel; half the tract upon the bench from the creek bottom being what is known as red land, which is red soil mixed with gravel, unfit for agricultural purposes and not susceptible of being irrigated; that no portion was planted to alfalfa; that there were no fruit trees, except seven orange trees, one lemon tree, bearing very small fruit, and one acre of a small variety of pear tree; that the buildings were small, the barn 14 feet by

18 feet, made of rough lumber, and the house, 20 feet
by 16 feet, constructed of rough boards, without lining
or paper; that there were no trees or rose-bushes in
front of or near the house; and that only a small por-
tion of the land was inclosed with a cheap fence.
Prior to the departure of plaintiffs for California,
defendant Dawson paid the plaintiffs $10, and defend-
ant McGovern paid them about $144 for expenses.
Upon learning that the representations and statements
of the defendants were false, plaintiffs immediately
sought restitution, and demanded of the defendants
the return of their real property, and offered to recon-
vey the title conveyed to them by A. W. Baker.

Lenora Miller testified that she never wrote the
typewritten letter to the Poe Company; that she was
postmistress at Jennings Lodge, Oregon, during that
time; that, if a letter came there addressed to Mr. L.
D. Miller (at Jennings Lodge), she certainly turned it
over to Mr. McGovern, as she did some bills which
came addressed in that manner.

1. Fraud is a question of fact. It is generally
proved by circumstantial evidence, and may be estab-
lished by inference, like any other disputed fact. Nor
is direct and positive proof essential to the establish-
ment of fraud. It is always permissible to prove it
by any circumstances from which it may follow as a
legitimate inference; this class of evidence in many in-
stances being the only proof available: *Porter* v.
*O'Donovan,* 65 Or. 1 (130 Pac. 393); *Kabat* v. *Moore,*
48 Or. 191, 198 (85 Pac. 506).

2. Defendant McGovern claims that he is not re-
sponsible for the representations made by Dawson;
that he simply acted as a witness to the transaction.
From a careful examination of all the evidence relat-
ing to the negotiations detailed above and culminating
in the obtainment of plaintiffs' valuable property, it

clearly and definitely appears that McGovern was the principal in the nefarious deal, and that Dawson was his accessory. McGovern acted as the agent of L. D. Miller, in whose name he transacted business. When questioned in regard to the typewritten letter from L. D. Miller to the Poe Company, McGovern stated that he did not remember ever having seen it. Mr. and Mrs. Clough were at the time advanced in years, and in poor health, and not competent to transact important business. They applied to McGovern for assistance, and, as he states, told him that they would pay him for his time and trouble. They trusted in him and acted upon his advice.

3. Every fiduciary relation implies a condition of superiority held by one of the parties over the other, and, in every transaction between them by which the superior party obtains a benefit, equity raises a presumption against its validity, and casts upon that party the burden of showing affirmatively its compliance with equitable requisites, thereby overcoming the presumption: 2 Pomeroy, Eq. Jur. (3 ed.), § 956.

4. McGovern disposed of 10.70 acres of the Newberg tract to Newell. This was conveyed to the latter by Dawson and wife at the instance of McGovern, who at first required a deed from Newell and wife for the Tillamook land taken in exchange therefor, with the name of the grantee left in blank. Newell, however, against McGovern's wish, inserted therein the names of Rose B. Dawson and V. J. Dawson, from whom he received a deed of the 10.70-acre tract. On May 3, 1911, and before plaintiffs received the deed of the California tract, the Dawsons conveyed the Newell land to Hugh H. McGovern. Title to this Tillamook tract was obtained by him through fraud, and in violation of the confidence reposed in him by the plaintiffs, and he cannot equitably retain the property which in

equity and good conscience belongs to the plaintiffs. The change of the property does not divest it of the trust. It is not in the hands of a *bona fide* purchaser for value without notice. The Circuit Court properly impressed a constructive trust thereon in favor of the plaintiffs: 39 Cyc. 528; *Springer* v. *Young,* 14 Or. 280, 283 (12 Pac. 400).

5. Lenora D. Miller obtained title to the five acres of the Newberg land through the fraud of McGovern, her agent, practiced upon the plaintiffs. She is therefore chargeable with the fraud, whether or not she knew or participated in it. In order for her to ratify and obtain the benefit of the deal, she must assume the burden of the whole transaction: *Porter* v. *O'Donovan,* 65 Or. 1 (130 Pac. 393); *Grover* v. *Hawthorne,* and cases there cited, 62 Or. 77, 96 (114 Pac. 472, 121 Pac. 808).

In 1 Pomeroy, Eq. Jur. (3 ed.), Section 155, we find the following: "Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title. * * If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

The decree of the lower court will therefore be affirmed.                              AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.