[No. 19919. Department Two. August 23, 1926.]

BLANCHE I. KARR, *Appellant*, v. R. E. MAHAFFAY *et al.,*
*Respondents,* JAY DuMAS, *Defendant.*[1]

[1] FRAUD (22)—ACTION—EVIDENCE—WEIGHT AND SUFFICIENCY. The
jury's finding of fraud by the defendant is amply sustained by
circumstantial evidence and legitimate inference, and it is error
to grant judgment n. o. v., where defendant was a party to a
scheme whereby he helped obtain a contract for the purchase of
land for nineteen dollars an acre, which the conspirators resold
to plaintiff on representations that it cost fifty dollars an acre
and could be replatted and sold for one hundred dollars an acre,
whereby she was swindled out of twenty thousand dollars by a
conspirator who had gained her confidence, and assumed to act
as her agent, and absconded with the profits of the venture;
there being evidence that defendant claimed to plaintiff to be
the owner of the land [contrary to his evidence], showing to
her papers as to his title, but withholding the contract dis-
closing the cost price of but nineteen dollars an acre.

[2] JUDGMENT (54) — TRIAL (63) — NOTWITHSTANDING VERDICT—
POWER OF COURT. A motion for judgment notwithstanding a
verdict involves no element of discretion, and can only be granted
where there is no evidence or inferences from evidence to sus-
tain it.

Appeal from a judgment of the superior court for
Pierce county, Card, J., entered December 30, 1925, in
favor of the defendants, notwithstanding the verdict
of a jury rendered in favor of the plaintiff. Reversed.

*Ellis, Fletcher & Evans* and *Ferrell, Meier & Hess,*
for appellant.

*Lyle, Henderson & Carnahan,* for respondents.

MAIN, J. — The plaintiff, after rescinding on the
ground of fraud, a contract to purchase land, brought
this action to recover the consideration paid. The
cause was tried to the court and a jury, and resulted
in a verdict in favor of the plaintiff in the sum of

[1]Reported in 248 Pac. 801.

$23,538.87. The defendants made a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. The court sustained the former motion and entered a judgment dismissing the action, from which the plaintiff appeals.

The facts which the jury had a right to find from the evidence introduced in the appellant's behalf are these: The appellant, in November, 1922, became acquainted with one Jay DuMas and this acquaintance ripened into an engagement of marriage in May, 1923. About the first of August, 1923, DuMas, having learned that the appellant had several thousand dollars in money and a contract upon land which she had sold in Yakima county with a balance due upon it of $20,000, began to advise that the appellant exchange her contract for a large tract of land three or four miles from Puyallup, which, he stated, could be purchased for fifty dollars an acre, and that he would plat and sell it for one hundred dollars. He stated that the land was owned by a wealthy, elderly gentleman who was contemplating an early trip to Europe. The appellant finally yielded to the persuasion of DuMas and consented to dispose of her contract and acquire the Puyallup land.

Dumas then went to R. E. Mahaffay & Company, of which the respondent R. E. Mahaffay was president (who will be referred to hereinafter as though he was the only party to the action), and met one Harry C. Johns who had charge of the real estate business of the company. DuMas was looking for a large tract of cheap land. Johns did not have such land listed, and interviewed one A. H. Barnhisel who was also engaged in the real estate business. Barnhisel had a tract of land consisting of approximately seven hundred acres which he finally agreed to sell for nineteen dollars an

acre, with a cash payment of $500. The respondent, Barnhisel, Johns and DuMas met one evening in the office of R. E. Mahaffay & Company. At this time, the terms of the contract were talked over in the respondent's presence. After the details were agreed upon, Barnhisel drew the contract. This contract was dated August 31, 1923, and was between Barnhisel and wife and R. E. Mahaffay, the respondent. It was acknowledged on the day it bore date, to wit, August 31, 1923. The contract provides for the sale of the land at nineteen dollars per acre with a cash payment of $500. It also provides that the purchaser shall take care of a $7,700 mortgage then upon the land.

On August 30, the day before this contract was signed, appellant had signed a contract for the purchase of the land which was presented to her in Seattle by DuMas. After signing the contract at the instance of DuMas, she came to Tacoma for the purpose, as she thought, of closing the transaction. The contract which she signed was blank as to the seller, and was not signed by any other person at the time she signed it. When she got to Tacoma, Dumas had her go to a hotel to wait, while he went out to finish up the transaction. In about an hour he returned and stated that the contract would not be ready for three or four days. In a few days the appellant received the contract, and, at that time, R. E. Mahaffay's name was written in as the party selling and he had signed and acknowledged the same on the 31st day of August, 1923.

By this contract the appellant was purchasing the same land which was covered by the other contract for the sum of $38,500, approximately fifty dollars per acre. The appellant assumed the $7,000 mortgage as a part of the purchase price. Barnhisel testified that R. E. Mahaffay & Company were to receive a commis-

sion of five per cent on the sale of the land by him. DuMas, prior to the execution of the contracts, had taken the appellant to show her the land which she was to purchase, but he did not show her the land covered by the contracts. In September following, the engagement of marriage between DuMas and the appellant was terminated.

About October 1, the appellant, being somewhat uneasy about the transaction, went to Tacoma, visited the office of R. E. Mahaffay & Company and had a talk with respondent. Up to this time, these parties had not met. At this interview, the respondent told the appellant that he owned the land which she had purchased and that he was buying it on contract. He showed her a deed which he had in his possession, which was made out to Barnhisel from West and Wheeler. He did not show her the contract by which he was purchasing the land from Barnhisel at nineteen dollars per acre. The reason for this is obvious.

About November 1, 1923, the appellant, having been notified by DuMas that twenty acres of the land had been sold, went to the office of R. E. Mahaffay & Company and there again met the respondent who told her that twenty acres of the land had been sold and one thousand dollars received. He gave appellant a statement signed by himself, in which he listed the twenty acres sold and the price, accounted for the payment of five hundred dollars on the contract, interest of $58.87 and payment on the mortgage of $240, leaving a balance due the respondent of $201.13. For this he gave her a check and took her receipt in words and figures as follows:

"10/30 1923.

"Received of R. E. Mahaffay Two Hundred one & 13/100 Dollars Proceeds of sale of 20 acres Puyallup

contract $1,000—Payt. on cont. 500   Int 58.87—Payt.
mtg $240.
$201.13                         Blanche I. Karr."

In January, 1924, the appellant was again notified to
go to the office of R. E. Mahaffay & Company. On this
occasion the respondent stated to her that ten acres of
the land had been sold, for which seven hundred fifty
dollars had been received. He took from the appellant
a receipt for six hundred thirty dollars which he then
paid to her. The balance, so the receipt recites, was
paid on the contract mortgage. At the time the appel-
lant signed the contract to purchase, she turned over
to DuMas her contract for the Yakima land upon which
there was a balance due of $20,000, and gave him $3,500
in cash. On January 31, 1924, the appellant learning
that she had been defrauded, rescinded the contract by
written notice, and subsequently brought the present
action to which DuMas was made a party, but, at that
time he having departed from the state and his where-
abouts not being known, service of process could not
be made upon him.

[1] That the appellant was grossly defrauded can-
not be doubted. The only question in the case is
whether the respondent was a party to that fraud or
fraudulent conspiracy, whichever it may be termed.
Whether there be fraud in a transaction is a question
of fact, but this fact need not be established by direct
and positive evidence. It may be proved, and gen-
erally is proved, by circumstantial evidence. It may
be established by inference like any other disputed
fact. In *Porter v. O'Donovan,* 65 Ore. 1, 130 Pac. 393,
it is said:

"Contention is made in the brief of defendant that
there can be no presumption of fraud, but it is said in
*Williamson v. North Pac. Lum. Co.,* 42 Or. 160, 70

Pac. 390: 'Fraud is a question of fact, but need not be shown by positive evidence, as this can seldom be done. It is generally proved by circumstantial evidence, and may be established by inference like any other disputed fact.' In the case of *Phipps v. Willis,* 53 Or. 195, 96 Pac. 868 (18 Ann. Cas. 119), it is said: 'Nor is direct and positive proof essential to the establishment of fraud. It is always permissible to prove it by any circumstances from which it may follow as a legitimate inference; this class of evidence in many instances being the only proof available.' See, also, *Kabat v. Moore,* 48 Or. 198, 85 Pac. 509."

That fraud may be established by inference from facts proven was recognized by this court in *State Bank of Goldendale v. Beeks,* 124 Wash. 467, 214 Pac. 817. In *Wolfgram v. Dill,* 37 S. D. 282, 157 N. W. 1059, with reference to a fraudulent conspiracy, it was said:

"Whether a conspiracy existed or not was, of course, a question for the jury, and we believe there was sufficient evidence tending to show the existence of a conspiracy to have warranted the trial court in submitting the question to the jury. True, there was no direct evidence of a conspiracy, but that is not material. Circumstantial evidence is competent to prove a conspiracy, and, if sufficient to convince the jury, is sufficient in law. Where two or more persons are found to be working for the accomplishment of the same definite object, it may be inferred that they are pursuing a preconcerted plan or arrangement to accomplish that object. Nor is it necessary to show that any particular member of an alleged conspiracy was a party to the wrongful enterprise at its inception, for 'every person entering into a conspiracy or common design already formed is deemed in law a party to all acts done by any of the other parties, before or afterwards, in furtherance of the common design.' "

Whether the testimony of the respondent is to be believed, or the inference drawn that he was a party to the fraud, was so plainly a question for the jury

that little argument is necessary. The respondent's defense was that he had no interest in the transaction and was signing the contracts merely as an accommodation to DuMas. To sustain a judgment notwithstanding the verdict in this case, it would be necessary not only to disregard the inference which the jury had a right to draw from the facts, but also disbelieve testimony of the appellant that the respondent stated he was the owner of the land and was purchasing it on contract.

[3] A motion for judgment notwithstanding the verdict involves no element of judicial discretion. It can only be granted when the court can say as a matter of law that there is neither evidence, nor reasonable inference from evidence, to sustain the verdict. *Brown v. Walla Walla*, 76 Wash. 670, 136 Pac. 1166; *Mattson v. Griffin Transfer Co.*, 90 Wash. 1, 155 Pac. 392.

The judgment will be reversed, and the cause remanded with direction to the superior court to pass upon the motion for a new trial.

TOLMAN, C. J. MACKINTOSH, PARKER, and MITCHELL, JJ., concur.