[No. 27930. Department One. August 21, 1940.]

CECILE I. NAGLE et al., Respondents, v. ANDREW E. POWELL et al., Appellants.[1]

*Geo. W. Young,* for appellants.

*Robertson & Smith,* for respondents.

MILLARD, J. — Plaintiffs, a marital community, brought this action against Andrew E. Powell and wife, Waldon T. Gilmore and wife, and Audrey H. Caulfield, to recover damages alleged to have been sustained as the result of an unlawful conspiracy between defendants. Trial of the cause to a jury resulted in a verdict in the amount of $2,250 in favor

[1]Reported in 105 P. (2d) 1.

of the plaintiffs against all of the defendants, which the court reduced to $935. From the judgment entered in accordance therewith, all of the defendants gave notice of appeal. However, all of the defendants except the marital community consisting of Andrew E. Powell and wife abandoned their appeal.

Counsel for appellants contends that, as conspiracy is a combination of two or more persons to commit a criminal or unlawful act or to commit a lawful act by criminal or unlawful means (*Eyak River Packing Co. v. Huglen*, 143 Wash. 229, 255 Pac. 123, 257 Pac. 638), and that, as a party can not be held liable as a conspirator unless the evidence shows that such person entered into an agreement with the other conspirators to accomplish the object of a conspiracy (*Dart v. McDonald*, 107 Wash. 537, 182 Pac. 628), appellants' motion for a nonsuit at the conclusion of respondents' case, or their motion for judgment *non obstante veredicto*, should have been granted; that, while a conspiracy may be proved in the absence of direct and positive evidence by circumstantial evidence (*Karr v. Mahaffay*, 140 Wash. 236, 248 Pac. 801), there is neither evidence nor reasonable inference from evidence to justify the verdict.

In *Karr v. Mahaffay*, 140 Wash. 236, 248 Pac. 801, we quoted with approval the following language from *Wolfgram v. Dill*, 37 S. D. 282, 157 N. W. 1059, respecting the rule that circumstantial evidence is competent to prove a conspiracy.

" 'Where two or more persons are found to be working for the accomplishment of the same definite object, it may be inferred that they are pursuing a preconcerted plan or arrangement to accomplish that object.' "

The first question presented is whether the evidence on behalf of respondents or the reasonable inferences

to be drawn therefrom were sufficient to make a question for the jury as to the existence of a conspiracy between appellants and defendants which had for its purpose the acquisition of an established business.

That there was substantial evidence to sustain the verdict on the question of conspiracy, hence the judgment should be affirmed, is clear from the following summarization of the facts:

In August, 1936, one McClintock and his brother commenced a mattress rebuilding business in Spokane at east 2520 Sprague avenue. In November, 1936, the older McClintock brother rented a room in the Powell building, which is owned by appellants, on a month-to-month tenancy at an agreed monthly rental of thirty dollars. The younger brother had quit the matttress rebuilding business. In the room in the Powell building, McClintock installed his mattress-making equipment and operated under the business name of McClintock Mattress Company.

In October, 1937, McClintock sold the business under a conditional sales contract to L. M. Nagle. The consideration for the contract was seventeen hundred and fifty dollars, of which Nagle paid five hundred dollars at the time of the execution of the contract and agreed to pay the balance of twelve hundred and fifty dollars in monthly payments of seventy-five dollars. Nagle operated the mattress-making business from January 1, 1938, to September 11, 1938.

During the month of August, 1938, a frame garage at the rear of the Powell building, in which a mattress gin used in the mattress rebuilding, was destroyed. August 31, 1938, Nagle requested appellants to erect a new building in which to house the gin. Appellants refused to construct a new building. A few days later (August 31, 1938), despite that refusal, respondents paid the rental for September to appellants.

On or about September 11, 1938, Nagle, who was then in financial straits, went to Hot Lake, Oregon, to obtain a contract with a sanitorium at that place for renovating mattresses. His wife remained in Spokane to take care of the mattress rebuilding business. September 16, 1938, she learned from her husband that he did not contemplate returning to Spokane, whereupon she went to Hot Lake to persuade her husband to return. She placed Waldon T. Gilmore in charge of the business during her absence.

She was detained in Oregon until October 1, 1938. Prior to that time, she communicated with Gilmore by telegram and also communicated with W. W. Wright, the owner of the apartment house where she and her husband resided. She requested Wright to call at the mattress factory to ascertain whether the business was operating properly. Wright made a number of trips to the factory, where he found Gilmore and Caulfield in actual charge of the business.

On Mr. Wright's first visit, a certificate from the state tax commission was upon the wall in the name of "McClintock Mattress Company, L. M. Nagle, proprietor." Later, and prior to the return of Mrs. Nagle to Spokane, he observed a new certificate on the wall in the name of "McClintock Mattress Company, A. Caulfield and W. Gilmore, proprietors." Three days after Mrs. Nagle left Spokane to visit her husband, defendant Mrs. Caulfield informed the state tax commission that she and Gilmore had taken over the business and applied for a new certificate.

September 30, 1938, defendant Gilmore paid appellant Powell the rental for the month of October, 1938, with funds of the McClintock Mattress Company which that company received during Mrs. Nagle's absence in Oregon. A receipt was executed by appellant Powell to McClintock Mattress Company, dated October 1,

1938, acknowledging the payment of the rent by the "McClintock Mattress Company, A. Caulfield and W. Gilmore."

By this time, Mr. Wright discovered that conditions at the mattress factory were not as he thought they should be, whereupon he telegraphed Mrs. Nagle and advised her to return immediately. She returned on October 1, 1938, and on her visit to the mattress factory, defendants Gilmore and Caulfield refused to make an accounting and settlement. After business hours, she and Mr. Wright went to the mattress factory for the purpose of examining the books. She was unsuccessful in making an entry as the lock had been changed by Caulfield and Gilmore that day following the interview with Mrs. Nagle. She called at the home of Gilmore that evening, but he refused to supply her with a key to the new lock, informing her that he and Mrs. Caulfield had leased the premises from appellant Powell.

The next day, Sunday, October 2, 1938, Mrs. Nagle and Mr. Wright called upon appellant Powell at his apartment in the Powell building, immediately above the mattress company. Powell was informed that Gilmore had locked respondents out and refused to surrender the premises or make an accounting. Mr. Powell was informed that the rental on the building was paid from the McClintock Mattress Company's funds. Powell informed respondents that the mattress company did not owe him anything for rent, that the rent was paid to November 1, 1938, and they would have to settle their differences with defendants Gilmore and Caulfield. With an oath, Powell said that Gilmore had paid the rent on the building; that Gilmore was entitled to the building, and "I am going to see that he gets it." He further said that Gilmore was a good mattress maker, he was well liked, and that

he was really entitled to the business and "I think he is the man that should have it." Mrs. Nagle testified under direct examination that Powell told her, "I want Wally Gilmore to have it, and I am going to see that he gets it."

October 4, 1938, during the absence of defendants Gilmore and Caulfield, Wright changed the lock on the door and Mrs. Nagle obtained possession of the property. October 8, 1938, Powell served upon Cecile I. Nagle and W. W. Wright a notice in writing requiring them to surrender and vacate the premises within three days. This notice was served upon them by defendant Gilmore.

October 14, 1938, Powell filed an action in the superior court for Spokane county based upon the alleged unlawful detainer of the premises by Mrs. Nagle. Appellant obtained a writ of restitution, which was executed by the sheriff October 19, 1938, and Mrs. Nagle, together with her personal effects and equipment, were removed from the premises. The day after respondents were dispossessed, defendants Gilmore and Caulfield filed the assumed trade name of General Mattress Company in the office of the county clerk and commenced operation of a mattress business in the same portion of the Powell building from which respondents had been dispossessed, which business defendant Caulfield was operating at the time of the trial of this action.

The evidence recited above warranted the jury in finding that Powell was working with the defendants for the accomplishment of the definite object of depriving respondents of their mattress rebuilding business. There was ample evidence tending to show the existence of the conspiracy, which warranted the trial court in submitting the question to the jury.

The jury was doubtless mindful of the fact that the Powells resided in an apartment immediately above the room occupied by the mattress factory, and that Mr. Powell's place of business was immediately adjacent to the mattress factory. It is clear from all the evidence and the reasonable inferences to be drawn therefrom that Mr. Powell conspired with the defendants, as alleged by respondents. It is also a reasonable inference that Mrs. Powell was aware of the conspiracy. The contention that the judgment should not be also against appellant wife is without merit.

Counsel for respondents contend that the trial court erred in reducing the amount of the verdict from $2,250 to $935. It is insisted that, under the terms of the statute (Rem. Rev. Stat. (Sup.), § 399-1 [P. C. § 8225-1], Laws of 1933, chapter 138, p. 482, § 2), before the verdict of a jury may be reduced—when such verdict is rendered upon instructions which are not challenged—there should be some statement by the trial court "that from the evidence in the case the verdict was induced by passion and prejudice."

Chapter 138, Laws of 1933, p. 481, relating to new trials in civil actions, amended chapter 34, Laws of 1909, p. 53, Rem. Rev. Stat., § 399 [P. C. § 8225], and also added a new section. In so far as it is pertinent in the case at bar, the statute reads as follows:

"The former verdict or other decision may be vacated and a new trial granted, on the motion of the party aggrieved, for any of the following causes materially affecting the substantial rights of such party:

. . .

"(5) Damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice; . . .

"7. That there is no evidence or reasonable inference from the evidence to justify the verdict or the

decision, or that it is contrary to law; . . ." (Rem. Rev. Stat. (Sup.), § 399.)

"If the trial court shall, upon a motion for new trial, find the damages awarded by a jury to be so excessive or inadequate as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice, the trial court may order a new trial or may enter an order providing for a new trial unless the party adversely affected shall consent to a reduction or increase of such verdict, and if such party shall file such consent and the opposite party shall thereafter appeal from the judgment entered, the party who shall have filed such consent shall not be bound thereby, but upon such appeal the supreme court shall, without the necessity of a formal cross-appeal, review de novo the action of the trial court in requiring such reduction or increase, and there shall be a presumption that the amount of damages awarded by the verdict of the jury was correct and such amount shall prevail, unless the supreme court shall find from the record that the damages awarded in such verdict by the jury were so excessive or so inadequate as unmistakably to indicate that the amount of the verdict must have been the result of passion or prejudice." Rem. Rev. Stat. (Sup.), § 399-1.

Appellants' motion for new trial was based upon all, except one, of the statutory grounds, according to the old statute. The fifth ground of the motion was: "Excessive damages appearing to have been given under the influence of passion or prejudice;" which is the language of subd. 5 of the old statute prior to its amendment by subd. 5 of the new statute quoted above. The sixth ground of the motion was: "Insufficiency of the evidence to justify the verdict and that it is against law;" which is virtually the language of subd. 7 of the old statute before its amendment by subd. 7 of the new statute quoted above.

The motion for new trial was denied, respondents

consenting "to the entry of judgment in the sum of $935, together with the costs of suit, as reduced by the Court from the verdict of $2250, in lieu of the Court granting a new trial."

We are not apprised what was in the mind of the court or what induced the reduction of the verdict. The memorandum opinion of the trial court is in the supplemental transcript, but same may not be considered as it is not included in the statement of facts.

If the trial court, in the exercise of its sound discretion, is satisfied that substantial justice has not been done in a given case, it is its right and its duty to set the verdict aside. Of that power the court has not been divested by Rem. Rev. Stat. (Sup.), § 399-1. *Brammer v. Lappenbusch,* 176 Wash. 625, 30 P. (2d) 947; *Hatcher v. Globe Union Mfg. Co.,* 178 Wash. 411, 35 P. (2d) 32; *Bennett v. King County,* 188 Wash. 196, 61 P. (2d) 1316. So, too, the court may, in the exercise of its sound discretion, as we held in *Bennett v. King County, supra,* reduce the verdict on consent of the respondents in lieu of granting motion for new trial.

If, under the evidence of respondents, the net profits of the business averaged $347.54 monthly, respondents were entitled to recovery for loss of profits of approximately six hundred dollars. While respondents had only a month-to-month tenancy, did not own any real property, and were in default approximately seven hundred dollars on their conditional contract of purchase of the business when evicted, there was evidence that the good will of the business was worth not less than two thousand dollars. The reduction of the verdict in lieu of granting a new trial—to which respondents consented—reflects conviction of the trial court that substantial justice demanded such action. On the whole record, we are not convinced that the trial court erred.

The reduced judgment, to which respondents consented, in the amount of $935, is accordingly affirmed.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.