JOHN E. VANDERPOOL, APPELLANT, V. CHARLES W. PARTRIDGE, APPELLEE.

FILED MAY 24, 1907. No. 14,846.

1. **Master and Servant: APPLIANCES.** The law requires masters to exercise ordinary care to provide reasonably safe tools and appliances for their servants.

2. ———: ———. But the foregoing rule has no application where the servant possesses ordinary intelligence and knowledge and the tools and appliances furnished are of a simple nature, easily understood, and in which defects can be readily observed by such servant.

3. ———: ASSUMPTION OF RISK. When the servant, having knowledge that a tool furnished by the master is unsafe and dangerous, continues to use the same without objection or protest, he assumes the risk of injury incident to its use.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*Weaver & Giller* and *W. S. Lewis,* for appellant.

*C. C. Wright* and *B. H. Dunham, contra.*

Good, C.

This action was instituted in the district court for Douglas county by the appellant to recover damages for an injury which resulted in the loss of his left eye. At the close of the plaintiff's testimony the trial court directed a verdict for the defendant, and plaintiff brings the case to this court on appeal.

Appellant alleged in his petition that, while he was employed by the appellee in cutting holes for the support of a joist in a brick wall of a building, and while using a two pound steel hammer and a chisel made from an old rasp, a chip or sliver from the end of the rasp flew off and struck him in the left eye, and so injured it that it had to be removed. Appellant alleged that the appellee carelessly and negligently ordered and directed him to perform work outside of his usual and customary employment; that appellee failed and neglected to give appellant proper instructions for the performance of the work; that appellee negligently furnished an old rasp made into a chisel on which there was no wooden handle or top to prevent the same from chipping off. Appellee in his answer admitted the injury resulting in the loss of the eye, and the employment of the appellant, denied all the other allegations of the petition, and pleaded negligence and assumption of risk by the appellant. At the close of appellant's evidence the trial court, upon motion of the appellee, directed a verdict in his favor upon the ground that, under the pleadings and the evidence, appellant was not entitled to recover.

The statement of the facts found in appellee's brief is so clear and nearly in accord with the record that, with slight variation, we adopt it in this opinion. The appellant was 25 years of age, apparently a man of at least average intelligence and knowledge, and received his injury in October, 1904, while cutting holes for joists in a brick wall of what is known as the "Allen Brothers' Building," which was being reconstructed by the appellee in the city of Omaha. Appellant, prior to his injury, had

worked on this building about a month off and on. His first work was tearing down an old brick wall, which was done with a crowbar and pick. He next dug holes in the bottom for the foundation. He had been using a hammer and a chisel for about ten days prior to the injury. Part of this time he was tearing down and shaping up a corner of the brick wall, where another wall was to be joined to it. In this work he used a hammer and cold chisel, and was instructed by the appellee and his foreman how to perform the work. While appellant was performing this work with a cold chisel, appellee told him the chisel was too thick, and sent him to Nelson, the foreman, to procure another chisel. The foreman gave him the old rasp, which was afterwards made into the chisel which appellant was using when he received the injury complained of. Appellee told appellant to take the rasp to the blacksmith shop and have it made into a chisel. Appellant took the rasp to the blacksmith shop and watched the blacksmith make it into a chisel, and, when it was finished, returned and showed it to the appellee, and asked him if it would do, and the appellee said: "Yes." Shortly after this the appellant was directed to cut the holes in the wall for the joists. It does not appear that he was given any specific directions as to what tools to use in performing that work. Nelson, the foreman, showed him where to cut the holes, and marked out the places with a line and chalk and showed him how to perform the work, making holes about 10 inches by 12 inches in size and 8 inches deep. In the performance of the work appellant stood on a ladder, holding the chisel in front of him and pounding upon it with the hammer, striking light blows. At the time he was injured he had cut about 20 to 25 holes, and the end of the chisel upon which he hammered had become considerably battered. Prior to his injury appellant had been in the employ of the appellee for about 18 months as a roustabout or carpenter's helper, and had worked for the appellee in remodeling the Barker hotel and several other buildings, where he had been employed in tearing down

partitions, repairing and putting in new floors, and tearing down brick walls, and assisting the carpenters in whatever they desired him to do. Sometime prior to his employment by the appellee he had worked in Omaha in the roundhouse of the Missouri Pacific Railway Company, and for the Chicago & Northwestern and the Missouri Pacific railway companies as a section laborer, and later in a roundhouse, firing engines. It also appears from the appellant's own testimony that three or four days prior to his injury, in talking with one of the carpenters engaged in work upon the building, he had stated to the carpenter that he believed the chisel was an unsafe tool to work with, to which the carpenter replied that it was too hard, it was not made for a chisel. The appellant further states that at the time of the injury he thought the chisel was too hard, and admits that he told the carpenter that the tool was too hard or dangerous prior to the injury, and that he at no time made any complaint or protest to the foreman or to the appellee concerning the unsafe or dangerous condition of the tool.

The rule of law is well recognized that it is the duty of the master to use ordinary care in furnishing reasonably safe tools and appliances for his servants. In *Central Granaries Co. v. Ault,* 75 Neb. 255, it was said: "The rule undoubtedly is that the master is not liable for furnishing dangerous machinery and appliances for the use of his servant, for all machinery is more or less dangerous. Employers are not insurers. They are liable for consequences not of danger, but of negligence." In *Lincoln Street R. Co. v. Cox,* 48 Neb. 807, it is held that "a master does not insure his servants against defective appliances. The rule is that he is bound to use such care as the circumstances reasonably demand to see that the appliances furnished are reasonably safe for use and that they are afterwards maintained in such reasonably safe condition. He is not liable for defects of which he has no notice unless the exercise of ordinary care under all the circumstances would have resulted in notice." In *Chicago, B. &*

*Q. R. Co. v. Oyster,* 58 Neb. 1, it is held that "a railroad company is only required to exercise reasonable and ordinary care and diligence in furnishing its employees reasonably safe roadbed, machinery and appliances for the operation of its road. The law does not impose the absolute duty of providing a reasonably safe roadway, but makes the company liable for negligence in that regard."

The foregoing cases fairly reflect the rule of law generally applicable to the duty of a master in furnishing tools and appliances for his servants, but, where the tools or appliances furnished are of a simple nature, easily understood and comprehended, and defects in which can be readily observed by persons of ordinary intelligence, the foregoing rule has but little application. "It is only machinery and appliances which are recognized as in their nature dangerous to employees using them, or working in proximity to them, as to which the employer owes a duty to the employee of looking out for his saftey." *Lynn v. Glucose Sugar Refining Co.,* 128 Ia. 501, 104 N. W. 577. In the case just cited the injury was caused by a chip slivered off from a steel hammer made from a piece of soft shafting and provided for the use of the defendant's workmen. It was contended in that case that, if the defendant had furnished hammers made of tool steel properly tempered, there would have been less danger that particles would sliver off to the peril of the workmen. In that case the court, in summing up the case, used the following language: "This case, so far as the evidence for plaintiff shows, may well be considered as close to the boundary line between accident and negligence; but we are satisfied that the cause of the injury was not anything which it was the duty of the defendant to anticipate and prevent, if it might have been prevented in the exercise of reasonable care, but was one of those uncertain happenings as to which every one must take his chances." In the case of *Martin v. Highland Park Mfg. Co.,* 38 S. E. 876, 128 N. Car. 264, it was held that "plaintiff, a weaver, was injured while assisting in the repair of a loom which he operated,

by a sliver of steel flying from a hammer and striking him in the eye. There was no evidence that the hammer was apparently defective, or was being negligently used. *Held,* That the plaintiff was properly nonsuited, since the injury was caused by a latent defect in the hammer, for which the defendant was not liable." In the body of the opinion in that case we find the following: "There is no complication about a hammer. It is not a piece of machinery which requires any attention whatsoever to keep in order. It cannot get 'out of fix,' unless the handle breaks. It requires neither art, science nor skill in its use. Brawn and muscle do the work. And it is known to be one of the most harmless of all tools to the person using it. Should a flaw or other patent defect exist, it would more certainly appear to the person undertaking to work with it, whose duty it would be to make it known to his employer. Should a latent defect exist, it could not be known by the closest inspection either to employer or employee; and for injury on that account legal responsibility would rest upon no one, and would be the misfortune of the sufferer. Whether properly tempered can only be ascertained by its use, and not by inspection. * * * Surely, it cannot be seriously contended that every employer is responsible for injuries occurring from improperly tempered axes, hoes, scythes, trace-chains, lap-links, bridle-bits, etc., the imperfections of which could not be known till used; or for defective whiffletrees, ax-helves, hoe-helves, handspikes, plow-lines, and such like, the defects of which would be first discovered by the party using them; unless the employer is shown to have had knowledge of such defects. If such be the rules of law, then the contentment of the farmer must give place to anxiety and dread lest injury, resulting to a servant from a splintered hoe-helve or handspike, defective bridle-bit, whiffletree, or plow-line, *et id simile,* may at any time occur, and sweep from him his farm and belongings in compensation of the damage done. To the same experience would the contractor expect to be subjected, should a defective nail, while being

driven by one of his carpenters, break and do injury. To such doctrine we cannot subscribe. Injuries resulting from events taking place without one's foresight or expectation, or an event which proceeds from an unknown cause or is an unusual effect of a known cause and therefore not expected, must be borne by the unfortunate sufferer, which seems to us to be the condition of the plaintiff in this case. For an injury caused by an inevitable or unavoidable accident while engaged in a lawful business there is no legal liability." 128 N. Car. 264. In *Wachsmuth v. Shaw Electric Crane Co.*, 118 Mich. 275, 76 N. W. 497, where a chip from a snap hammer struck plaintiff and injured him, it is held that the duty of inspection by the master of appliances used by servants does not extend to small and common tools in every day use; of the fitness for such use the servants using them may reasonably be supposed to be better judges than the master. From these cases and the many citations therein contained, it is apparent that the master is not liable for injuries resulting from latent defects in simple tools or appliances, such as a hammer, saw, chisel, and the like. The reason for the rule is that any defect in such simple tools or appliances would be as obvious to the servant as to the master, and the underlying reason in all the cases for holding the master accountable for injuries resulting from imperfect or defective tools and appliances is that the servant is ordinarily presumed to have no knowledge of the dangers incident to their use. But, as we have seen, the rule has no application to the simpler tools and appliances. Nor would the rule have any general application at all where it was shown that the servant had knowledge of the defective and dangerous condition of the tools he was using.

In the case at bar it is clearly shown from the record that appellant, prior to his injury, had actual knowledge that the chisel was unsafe and dangerous. His continued use of the tool after knowledge that it was dangerous and unsafe, without objection or protest, or without notice to the master, under the authorities just cited and quoted

from, would give him no right of recovery against the master for the injuries received. By his continued use of the chisel after knowledge of its unsafe and dangerous condition, he must be held to have assumed all risk of injury that might result from its use, and, having assumed this risk, he is in no position to ask compensation from his master.

In view of the conclusion at which we have arrived, it is unnecessary to discuss the other assignments of error. The action of the trial court in directing a verdict for the appellee was proper and should be sustained. We therefore recommend that the judgment of the district court be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.