[No. 10821.    Department Two.    December 13, 1913.]

FLORENCE V. BROWN, *Respondent*, v. THE CITY OF
WALLA WALLA, *Appellant*.[1]

TRIAL—PROVINCE OF COURT AND JURY—JUDGMENT NON OBSTANTE.
A motion for judgment notwithstanding the verdict involves no
element of discretion and can be granted only when, as a matter
of law, there is neither evidence nor reasonable inference from evi-
dence sufficient to sustain the verdict.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DISCRETION. A motion
for new trial for insufficiency of the evidence rests in the discretion
of the trial court, and the action of the court cannot be interfered
with on appeal except for abuse of discretion or refusal to exercise
it, or where the action is based upon misconception of the law.

APPEAL — REVIEW — REFUSAL OF NEW TRIAL—MISCONCEPTION OF
LAW. The refusal of a new trial for insufficiency of the evidence,
on the assumption that the supreme court has the power to weigh
the evidence and review the ruling, is a misconception of the law, re-
quiring a reversal, where the trial court had expressed the opinion
that the motion should be granted.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for Walla
Walla county, Brents, J., entered January 12, 1912, upon
the verdict of a jury rendered in favor of the plaintiff, in an
action in tort.    Reversed.

*John F. Watson* and *Rader & Barker*, for appellant.

*Dunphy, Evans & Garrecht*, for respondent.

ELLIS, J.—The plaintiff seeks in this action to recover
damages for injuries suffered by being thrown from a buggy
by a runaway horse on South Second street, in the city of
Walla Walla.    The material facts are as follows:    South
Second street runs approximately north and south.    Whit-
man street comes into it from the east almost a block south
of where Eagan street comes in from the west.    Each of these
streets terminates at its intersection with South Second street.

[1]Reported in 136 Pac. 1166.

At the time of the accident, South Second street was being paved. The concrete base had been laid from south of Whitman street to about the north line of Eagan street. There was a street car track on Whitman street which curved into South Second street and extended therein to the north. There was also a street car track in Eagan street which curved into South Second and about opposite the north line of Eagan street connected with the other track forming a wye. This curve of the Eagan street track was elevated about four inches. Street cars were in regular operation on these tracks. There was a drop or incline from Whitman street to the concrete base on South Second street, estimated by different witnesses at from eight to eighteen inches.

Back a short distance from the east line of South Second street, Whitman street was obstructed on the north of the car track by a pile of crushed rock, about sixty feet long, fifteen feet wide, and something over four feet high, practically closing the street north of the car track. South of the car track there was a pile of sand ten or twelve feet wide and two and one-half or three feet high; and between this and the car track, was a concrete mixer, practically closing the street south of the track, save a space eight or ten feet wide between the mixer and the track. Vehicles had passed through this opening, marking a well-defined roadway. The car track was left unobstructed for the operation of street cars. A few feet from the south line of Whitman street, South Second street was barricaded by boards, preventing any passage on that street to the south.

The accident happened at about six o'clock in the evening of Sunday, August 7, 1910, when it was perfectly light. Up to this point, there was no conflict in the evidence. A conflict arises as to other obstructions in Whitman street. A man employed by the paving company for the purpose of keeping up barriers and placing of lights as danger signals, testified that, after the street was torn up, he had endeavored to keep a board with one end resting on the sand or a bag of

cement against the mixer and the other end on a section of drain tile standing on end, just a sufficient distance from the street car track to permit cars to pass; and that at nights he placed on this board a red light and another on the gravel pile north of the track near the street curb; that, on the Sunday in question, this board had been twice knocked down by street cars passing round the curve, and the last time he replaced it with the north end some three or four feet from the track; that he had placed a red light upon it and another on the rock pile about twenty-five or thirty minutes before the accident. In this he was corroborated by positive testimony of three other witnesses, two of whom claimed to have been sitting at the time on the front porch of a house located directly across Second street opposite the end of Whitman. The third witness testified that, at the time, he was sitting in a yard above and overlooking Whitman street, and located in the angle formed by the intersection of the south line of Whitman and the east line of South Second streets, and saw the board and lights placed in position.

The plaintiff and her niece, who was in the buggy with her at the time it was driven past this point by another occupant, a man who was killed in the accident, testified that there was no board there. In this they were corroborated by the somewhat negative testimony of several witnesses who were in the vicinity shortly before or shortly after the accident, who said they saw no board and some of them that they saw no lights. The niece testified that she saw the light on the rock pile near the north curb of the street, and a light near the mixer just as she passed it, but behind a pile of sand so as not to be visible to one coming down Whitman street till opposite it and too late to turn back, and that she then called it to the attention of Owsley, the driver, who observed that it was all right as the tracks indicated that other teams had driven in there. The evidence was without conflict that some horse drawn vehicles had been driven from Whitman into South Second street on this and prior days, but that

many, on the drivers observing the conditions, had been turned and driven back up Whitman street.

On the day of the accident, the plaintiff and Owsley had driven to Walla Walla from Dayton, where she resided, leading behind their vehicle a horse belonging to Owsley, which he and the plaintiff were endeavoring to trade to one Wood, a horse dealer of Walla Walla. About five o'clock in the afternoon, Owsley went to the livery stable and had the horse hitched to a single buggy. While being driven out of the barn down a slight incline, the horse became frightened and broke the buggy shafts. These were replaced, and the horse being again hitched to the buggy, Owsley proceeded to the hotel or lodging house where the plaintiff and her niece were and took them into the buggy. The plaintiff, being an expert horsewoman, took the reins and drove to Wood's home to inspect his horse, upon which Owsley desired her opinion. From there the party started to drive to the home of the niece by way of Whitman and South Second street. When they reached the obstructions in Whitman street, Owsley drove down the slight incline onto the concrete intending to go south, but then noticing the barrier on South Second street, turned to the north, when the horse became frightened and ran away, the buggy wheels striking the raised curve of the street car track at the Eagan street wye, throwing the occupants out, killing Owsley and seriously injuring the plaintiff. There was considerable testimony as to the gentleness of the horse to rebut the inference of his fractiousness raised by the incident at the barn.

The jury returned a verdict of $4,500 for the plaintiff. The defendant moved for judgment notwithstanding the verdict and for a new trial. The trial court, after stating the obvious fact that both motions could not be granted, expressed the view that one or the other ought to be sustained upon the merits of the case, expressing at considerable length the conviction that the evidence showed no negligence on the

22—76 WASH.

defendant's part but did show the plaintiff guilty of negligence as a matter of law. After further expressing the view that justice would be done by a reversal in this court, he overruled both motions. From a judgment on the verdict, the defendant prosecutes this appeal, assigning as errors the action of the court, (1) in denying the motion for judgment notwithstanding the verdict; (2) in denying the motion for a new trial.

I.  The motion for judgment notwithstanding the verdict invokes no element of discretion. It invokes the pure judicial functions of the trial court and of this court on review. It can only be granted when the court can say, as a matter of law, that there is neither evidence nor reasonable inference from evidence sufficient to sustain the verdict. Our summary of the evidence makes it plain that the motion in this instance was properly denied. Whether barriers were maintained sufficient to warn a reasonably prudent man of the danger of entering South Second street was, under the conflict in evidence, a question for the jury. Whether the condition of that street could be seen from Whitman street in time to turn back, and whether the evidences of others having driven through the opening justified the respondent and her companions in essaying that route, and whether the respondent and Owsley were so identified in a common enterprise as to charge her with his contributory negligence in any event, and whether the barriers had been so negligently maintained by the paving company and for a sufficient length of time to put the city on notice of the conditions, were, also, all questions for the jury, on sharp conflicts in the evidence.

II.  The motion for a new trial invokes, on the other hand, a compound of the discretionary and judicial functions of the trial court. Both the discretion and the attendant responsibility of its exercise are vested by the statute in the trial court, not in this court. *Tacoma v. Tacoma Light & Water Co.*, 16 Wash. 288, 47 Pac. 738. Where the motion is based upon the claim of insufficiency of evidence, the trial court

alone possesses the power to weigh the evidence and, in its discretion exercised thereon, either to grant or deny the motion. The powers of this court are confined to a consideration of the evidence only in review of that exercise. This is not a court of first instance. We can only interfere with the exercise of the discretion of the trial court in granting or refusing to grant a new trial in such a case where there has been a clear abuse of discretion (*Thomas & Co. v. Hillis*, 64 Wash. 288, 116 Pac. 854; *Id.*, 70 Wash. 53, 126 Pac. 62; *Sylvester v. Olson*, 63 Wash. 285, 115 Pac. 175; *McGraw v. Manhattan Co.*, 66 Wash. 388, 119 Pac. 822; *Faben v. Muir*, 59 Wash. 250, 109 Pac. 798; *Farrell Co. v. Ihrig*, 50 Wash. 281, 97 Pac. 52; *Angus v. Wamba*, 50 Wash. 353, 97 Pac. 246; *Best v. Seattle*, 50 Wash. 533, 97 Pac. 772; *Hughes v. Dexter Horton & Co.*, 26 Wash. 110, 66 Pac. 109; *Rotting v. Cleman*, 12 Wash. 615, 41 Pac. 907); or where that discretion has not been exercised by the trial court at all (*Tacoma v. Tacoma Light & Water Co., supra; Clark v. Great Northern R. Co.*, 37 Wash. 537, 79 Pac. 1108; *Sharp v. Greene*, 22 Wash. 677, 62 Pac. 147; *Cranford v. O'Shea*, 75 Wash. 33, 134 Pac. 486); or where the action of the trial court is based upon a misconception of the law. *Grant v. Huschke*, 70 Wash. 174, 126 Pac. 416; *Snider v. Washington Water Power Co.*, 66 Wash. 598, 120 Pac. 88; *Armstrong v. Musser Lumber & Mfg. Co.*, 43 Wash. 584, 86 Pac. 944; *Tham v. Steeb Shipping Co.*, 39 Wash. 271, 81 Pac. 711; *Lawrence v. Pederson*, 34 Wash. 1, 74 Pac. 1011.

The court's remarks in overruling the motion for a new trial clearly bring this case within the rule announced in the decisions last cited. He said: "If I were upon the supreme court, as I look at this case, I should be in favor of granting one or the other of these motions. As I say, I cannot grant them both, for they are inconsistent, but I should grant one or the other of them." This, as applied to the motion for a new trial based on a claim of insufficiency of evidence, evinces a palpable misconception of the law. It assumes that the

supreme court has the power to weigh the evidence and in its discretion either to grant or refuse a new trial, when, as we have seen, it has no such power. Its only power in such a case is to review the action of the trial court, which alone has the discretion and responsibility of weighing the testimony of witnesses whom he has seen and heard testify and whose demeanor he has observed. The refusal to grant a new trial on the assumption that this court can do so upon conflicting evidence, was a palpable mistake of law. Had the trial court granted a new trial for insufficiency of the evidence, we could not have set the order aside as an abuse of discretion, in the face of the conflict of evidence disclosed by the record.

The judgment is reversed, and the cause is remanded with direction to the trial court to reconsider the motion for a new trial and exercise its discretion thereon and either grant or refuse a new trial.

CROW, C. J., MAIN, and MORRIS, JJ., concur.

FULLERTON, J., dissents.