[No. 11462.  Department One.  January 8, 1914.]

SPIROS BOUGAS, *Respondent*, v. ESCHBACH-BRUCE COMPANY, *Appellant.*[1]

MASTER AND SERVANT—DEFECTIVE APPLIANCE—SIMPLE TOOLS—DEFECTS—REPAIRS—ASSUMPTION OF RISKS. A clamp, similar to an ordinary clevis, used as a block on the rails to hold a steam shovel, is a simple tool, within the rule that an adult employee assumes the risks from simple tools in his exclusive use; hence plaintiff, who constantly used the clamp and frequently had it repaired, cannot recover for an injury sustained when a small piece of metal broke off the clamp key, when hit with a hammer, owing to the fact that a piece of hard steel had been welded into the key in repairing it when soft steel should have been used.

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered April 10, 1913, upon the verdict

[1]Reported in 137 Pac. 472.

of a jury rendered in favor of the plaintiff, for personal injuries sustained by a pit man in steam shovel work. Reversed.

*William B. Clark*, for appellant.

*Thos. H. Wilson*, for respondent.

Gose, J.—This action is founded on the alleged negligence of the defendant in failing to use reasonable care in repairing a clamp key. Verdict and judgment for plaintiff. The defendant has appealed.

The appellant was operating a steam shovel, in Umatilla county, in the state of Oregon, at the time respondent sustained the injury complained of. The respondent was in its employ as one of the pit men. His particular duties were to attach an iron or steel clamp to the steel rail of the track upon which the car containing the steam shovel was operated, and to remove it when the car eased off for the purpose of moving. When the car was at the desired place, its wheels were blocked by a railroad tie placed against the clamp. The clamp, while larger, was similar to an ordinary clevis. It rested upon the rail, and was held in place by a key inserted through its eyes beneath the rail. The clamp was attached when the car was stationary, and removed when the car eased off preparatory to moving, and was reattached when the car again became stationary. The key was driven in and out by means of a small sledge hammer. The clamp and key were made by a smith employed by the appellant. Respondent was twenty-seven years of age, and had been engaged in the particular work about fifty-eight days, when, in driving out the key, a small piece of metal broke from the key and penetrated and destroyed his eye. The complaint alleges, that the key was originally made of soft steel, that it spread at the end from constant hammering, and that a blacksmith in the employ of the appellant, in reshaping it and without the knowledge of the respondent, welded a piece of hard, brittle

steel into the small end.   The respondent used the key in the usual way for two or three days after the last repair before he met his injury.

The only negligence charged, or sought to be proven, is in the repair of the key.   There is no charge that the smith was incompetent.   The witnesses agree that such a key should be made of mild or soft steel.   The respondent testified that, from time to time as the key became blunt from use, he reported the fact to the engineer, who in turn directed him to take it to the smith for repair.   He said he had it repaired many times.   He also said that he always used the same clevis and key.   He further testified that, after the injury, he noticed that the small end of the key had a blue color, and that he then observed that, in repairing it the last time, hard steel had been welded in the small end.   The key was not produced at the trial.

The respondent invokes the rule that it is the duty of the master to use reasonable care to keep the instrumentalities used in the work in a reasonably safe condition.   He argues that this duty is nondelegable, and that the facts stated support the verdict.   On the other hand, the appellant, while conceding the rule in proper cases, insists that, in cases of simple tools, the master is exempt from the duty to inspect for the purpose of ascertaining the development of defects or disrepair in the course of their use, because such conditions are as much within the observation of the employee as the master.   Hence it is said that no liability rested on the master for the ordinary perils resulting from latent and unusual defects which, from the simple nature of the appliance, are known to all men alike.   In keeping with these views, the appellant seasonably moved for a nonsuit and directed verdict and a judgment *non obstante.*

As applied to experienced adults, where the tool is simple and in the exclusive use of the employee, the courts are practically a unit in holding that the employee assumes the usual and ordinary risks incident to their use.   *Cole v. Spokane*

*Gas & Fuel Co.*, 66 Wash. 393, 119 Pac. 831; *Stork v. Stolper Cooperage Co.*, 127 Wis. 318, 106 N. W. 841; *Borden v. Daisy Roller Mill Co.*, 98 Wis. 407, 74 N. W. 91, 67 Am. St. 816; *Garnett v. Phoenix Bridge Co.*, 98 Fed. 192; *Louisville etc. R. Co. v. Allen*, 47 Ill. App. 465; *Martin v. Highland Park Mfg. Co.*, 128 N. C. 264, 38 S. E. 876, 83 Am. St. 671; *Vanderpool v. Partridge*, 79 Neb. 165, 112 N. W. 318, 13 L. R. A. (N. S.) 668 and foot note; *Lynn v. Glucose Sugar Co.*, 128 Iowa 501, 104 N. W. 577.

In the *Cole* case, the plaintiff was carrying coke in an iron pan with two handles projecting lengthwise from the ends so that a man could walk between them. One of the handles slipped in his hand and fell, causing the injury complained of. In holding that there was no negligence, the court said:

"The rule seems well established that an instrument of simple structure, presenting no complicated question of power, motion or construction, and intelligible in all of its parts to the dullest intellect, does not come within the rule of safe instrumentalities, for there is no reason known to the law why a person handling such instrument and brought in daily contact with it should not be chargeable equally with the master with a knowledge of its defects;"

citing numerous cases. In the *Vanderpool* case, the plaintiff, while cutting holes in a brick wall with a two-pound hammer and a chisel made from an old rasp, was struck in the eye with a chip or sliver from the end of the rasp, causing the loss of the eye. He had been using a cold chisel and took the rasp at the instance of the foreman. After reviewing the authorities, the court said:

"From these cases and the many citations therein contained, it is apparent that the master is not liable for injuries resulting from latent defects in simple tools or appliances, such as a hammer, saw, chisel, and the like. The reason for the rule is that any defect in such simple tools or appliances would be as obvious to the servant as to the master, and the underlying reason in all the cases for holding the master accountable for injuries resulting from imperfect

or defective tools and appliances is that the servant is ordinarily presumed to have no knowledge of the dangers incident to their use.  But, as we have seen, the rule has no application to the simpler tools and appliances."

The following have been held to be simple tools within the rule stated:  A backing hammer, a buffer, chisels, claw bars, crow bars, driftpins, dolly bars, a fork used in a dye house, a hook with a short handle used for moving timbers in a sawmill, lifting jacks, machine hammers, mauls, monkey wrenches, pinch bars, prize poles, punches, rivet hammers, snap hammers, soft heads, and wrenches.  13 L. R. A., foot note, p. 670.

The clamp and key do not differ from the ordinary tools and implements used upon the farm, such as lines, tugs, neck yokes, double trees, lead bars, lead chains, clevises, hammers, nails, axes, wire stretchers, brake rods, and many other simple tools in daily use upon the farm.  In the use of such simple tools, the employer has a right to assume that the experienced adult employee who is constantly handling them will observe and report any disrepair that may occur in their use, and if repair becomes necessary, the master has discharged his full duty when he has had them repaired by a competent workman.

The respondent cites *Graaf v. Vulcan Iron Works*, 59 Wash. 325, 109 Pac. 1016.  In that case a wheel dropped from a heavily loaded truck which the plaintiff and another were wheeling.  Using the truck was only an incident to the plaintiff's general work as a mechanic.  There were five or six trucks furnished and used indiscriminately by the employees, each employee using the one that happened to be convenient.  Upon these facts, it was held that the jury were justified in finding that the duty of inspection was not cast upon the plaintiff.  The respondent also cites *Johnson v. Missouri Pac. R. Co.*, 96 Mo. 340, 9 S. W. 790, 9 Am. St. 351.  In that case, the injured party testified that he examined the tool after its repair, and that it appeared well

dressed and in good shape. In the case at bar, the respondent testified that he examined the key after he met his injury; that he then observed that the color of the small end was different from the color of the other part of the key, and that he then discovered that a piece of steel had been welded into the small end. He does not testify that he made any examination before he was injured. However, the Missouri case, as applied to the facts at bar, stands practically alone. Cases may be found where the rule we are announcing has not been extended to infants, inexperienced young men, and employees who were using the tool for the first time in obedience to the direction of the master.

This court has been exceedingly liberal in holding to the rule that, ordinarily, the duty of the master to furnish a safe place and safe tools for its employees is a nondelegable duty. The rule, however, is rested upon the ground that the knowledge of the master is superior to that of the employee; and when the reason for the rule fails, the rule itself must fail.

We think, upon the evidence, the court should have directed a judgment for the appellant. The judgment is reversed with directions to dismiss.

CROW, C. J., CHADWICK, ELLIS, and MAIN, JJ., concur.