[No. 12082. Department One. December 15, 1914.]

CHEUSA PAICH, *otherwise known as Peter Cim, Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent.*[1]

MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISKS— "SIMPLE TOOLS." A track repairer, engaged in replacing old ties with new ones, who was stuck in the eye by a splinter from an old spike which he was driving, cannot recover for his injuries, where it appears that the men were instructed to use the old spikes, but new ones were furnished and selected by some member of the crew whenever it became necessary on account of any unfitness of an old spike; since the selection of spikes was a matter left to the judgment of the men, and the case falls within the rule of nonliability in the case of "simple tools," the defects in which are as apparent to the servant as to the master.

JUDGMENT — VACATION — ERROR OF LAW — TRIAL — DIRECTION OF JUDGMENT AFTER VERDICT. Where defendant challenged the sufficiency of the evidence, both at the conclusion of the plaintiff's case and at the end of the whole case, each of which motions should have been granted, the court has power to vacate a judgment entered for plaintiff on the verdict of the jury, and direct judgment for the defendant, there being neither fact nor reasonable inference upon which the verdict could stand.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered October 4, 1913, in favor of the defendant, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee engaged in railroad construction work. Affirmed.

*Jay C. Allen* and *J. H. Allen,* for appellant.

*C. H. Winders,* for respondent.

[1]Reported in 144 Pac. 919.

MORRIS, J.—Appeal from an order vacating a judgment in favor of appellant and granting judgment for respondent. Appellant was one of a gang of track repairers employed by respondent. The work was replacing old and defective ties with new ones. The spikes would be withdrawn from the old ties, and thrown down alongside of the track. The old ties would then be withdrawn, new ones substituted, and the rails spiked to them, using the old spikes when they were sufficiently strong and provided with good heads that would hold down the rails. New spikes were provided to be used when the old spikes were unfit for use. Appellant was driving in a spike when a piece of steel struck him in the eye. The negligence complained of was in the use of spikes which were old, worn, and unfit for use and dangerous to use, of which the respondent had knowledge but the appellant none, and that appellant relied upon the superior knowledge of respondent as to the conditions of the spikes. The record shows that the work was being done in the customary manner employed by all railroads in work of this character, and that the men doing the work would select the spikes, using their own judgment to determine whether or not they were proper for the purpose for which they were to be used. There was testimony to the effect that the men were directed to use the old spikes, and some one of the workmen told the foreman that the spikes were "no good," but it cannot be determined whether this reference was to the holding power of the spike in the new tie or to the danger from its use to the workmen. There is nothing to show any direction to use the spike selected by appellant, or any intimation from the foreman or any one else that there was anything about it that would indicate it should not be used, either from the standpoint of sufficiency or danger. Nothing appears to indicate any difference between this spike and many of the others. We simply know that appellant and the man working with him selected a spike from those lying near, placed it in proper position to be driven, and that, while they were

driving it and two men were spiking the opposite rail to the same tie, appellant received his injury.

It is the duty of the master to furnish his servant with proper tools and appliances, but it cannot be said that, in repairing a railroad track, it is the duty of the master to personally inspect every spike before it is used by the workmen, any more than it is the duty of the builder, in constructing a building out of old material, to inspect every board and nail that goes into the structure. The direction to use the old spikes was a representation that, as a rule, they were fit for the use intended, but that this did not apply to every spike is apparent from the fact that new spikes were at hand. The fact that new spikes were supplied, whether in great or small quantities, was in itself an intimation that some of the old spikes could not and should not be used, and that, when such an one was discovered, it was to be thrown aside and a new one substituted. This, however, was to be determined by the workman and not by the master. The spike that respondent was using was straight and solid, but rusty. All the old spikes were more or less rusty, and it was a habit of the men when they picked up a spike that was considered too rusty, to hit it against the rail or in some other way dislodge the rust. This was a matter of personal judgment, and the remedy was in their own hands. Appellant had been engaged in railway construction for eight months and was familiar with work of this character. He makes no complaint that there was any feature of the work that he should or could have been instructed in. We find no negligence chargeable to respondent. The case does not fall within the rule laid down by those cases where, because of a defect in some tool or appliance furnished the servant by the master, the servant has been injured. Those cases rest upon the theory that, when the master gives to the servant a particular tool with which to do a given piece of work, the master thereby represents to the servant that the tool is a proper one for the purpose intended and that it

can be used with a reasonable degree of safety. It would not apply when, as here, the master gives to the servant a lot of spikes, some old and some new, and directs the servant to use the old spikes whenever they can be used and, when not, to use the new ones, leaving it to the judgment of the servant to determine when the old spike is so unfit for use that a new one should be selected. There is no complaint that the maul used by the appellant, and which was furnished him by the respondent for use in driving these spikes, was defective in any way, or that any defect existed in the spike. The sole complaint is as to the rust on the spike. The testimony showing that appellant himself was at liberty to select the spike he used, and could determine its condition as well as any other person, it must be held that the rule of assumption of risk applies. Not to so hold under the circumstances, would make the master an insurer. The case is controlled by *Bougas v. Eschbach-Bruce Co.*, 77 Wash. 347, 137 Pac. 472, and the cases there cited, announcing what is known as the "simple tool" rule. The case of *Zikas v. Oregon-Washington R. & Nav. Co.*, 179 Fed. 893, cited by appellant, has no application to the facts. The facts are not similar, and the case interprets the Federal employer's liability act upon points that have no bearing in this case.

Appellant submits the contention that the lower court was powerless to grant the judgment complained of. Respondent had challenged the sufficiency of the evidence, both at the conclusion of appellant's case and at the conclusion of the whole case. Each of these motions was well taken and should have been granted. There is neither fact nor law upon which the verdict could stand. We are not disposed to say that the lower court is powerless to correct its own errors and that, having done so, its action is void. The granting of motions for judgment is proper when the court can say, as a matter of law, that there is neither fact nor reasonable inference to support the verdict. *Brown v. Walla*

*Walla,* 76 Wash. 670, 136 Pac. 1166; *Forsyth v. Dow,* 81 Wash. 137, 142 Pac. 490.

The judgment is affirmed.

CROW, C. J., GOSE, PARKER, and CHADWICK, JJ., concur.