# CASES

DETERMINED IN THE

# SUPREME COURT
OF

# WASHINGTON

[No. 12991.   Department One.   February 21, 1916.]

JOHN MATTSON, *Appellant*, v. GRIFFIN TRANSFER COMPANY,
*Respondent.*[1]

JUDGMENT—ENTRY—NOTWITHSTANDING VERDICT—TIME—ENTRY OF
VERDICT.   The entry of verdict in the minute book and journals of
the court is not entry of the judgment, and does not bar entry of
judgment *non obstante veredicto*, as would be the case if judgment
had been entered.

SAME.   Judgment *non obstante veredicto* may be granted after
reception of the verdict, but can only be resorted to where there is
no element of judicial discretion and the court can say there is no
evidence or reasonable inference from evidence to sustain the ver-
dict; otherwise, the remedy is by motion for a new trial.

TRIAL—ISSUES—SUBMISSION TO JURY—PROVINCE OF COURT.   The
practice of submitting a case to the jury, although the court is con-
vinced that there is no fact to sustain the verdict, is not to be dis-
couraged; and so doing does not waive the court's judicial function
of determining whether any lawful judgment can be entered upon
an undisputed state of the record.

MASTER AND SERVANT — INJURIES TO SERVANT — ASSUMPTION OF
RISKS—CONTRIBUTORY NEGLIGENCE.   A teamster, suffering injuries in
a runaway, assumes the risk of a broken seat spring, complained of
to the foreman who promised to fix it after return from the trip,
where there was no element of coercion, and it was a simple defect,
well known to him, and he could have easily repaired it for the one
trip by tying a rope or wire around the loose end of the spring; since
the promise to repair did not relieve him of the duty to exercise
reasonable care under the circumstances.

[1]Reported in 155 Pac. 392.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered March 30, 1915, in favor of the defendant, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee engaged in delivering wood. Affirmed.

*Govnor Teats, Leo Teats,* and *Ralph Teats,* for appellant.

. *S. F. McAnally,* for respondent.

CHADWICK, J.—Appellant is a teamster and had been in the employ of the respondent for about twelve years. Respondent operates several fuel yards in the city of Tacoma. Just before noon on the 6th day of August, 1913, appellant was directed to hitch onto a wagon and deliver a load of wood. Appellant had not, theretofore, driven the wagon he was directed to take. He says, and the jury found, although the greater number of the witnesses testified to the contrary, that one of the springs under the wagon seat was broken; that the upper half of the spring had come loose from the lower half; that the two halves, where they came together at the back of the spring, had been fastened together with a piece of wire, but that the front ends had not been fastened in any way, the upper half resting on top of the lower half; that he called the attention of the yard foreman to the defect, saying: "This wagon is not fit to go down that hill with this team" (the horses were young and had been but recently broken); to which the foreman replied: "This is the only wagon that we got here, and you got to take it now, and when you get back we have it fixed up." Upon cross-examination, appellant admitted that he probably would have taken the wagon without this assurance.

Appellant also testifies that the wagon had been driven by, and in that sense belonged to, one Iverson, that Iverson had refused to take it out because it was broken, that he ex-

pected to use it just for the one trip, and that Iverson would take it after it was fixed.

After the complaint and promise to repair, appellant went to his lunch, and, after lunch, started with his load. In driving down a hill, a trace chain came loose and struck one of the horses, which kicked over the tongue. This so frightened both of the horses that they ran away. Appellant fell from the wagon, which passed over his legs, so bruising him that he was incapacitated for seven or eight weeks and now suffers a permanent stiffness and weakness of the limbs. After he recovered, he returned to work for the respondent and continued in his employ until some time in May following, when he demanded that respondent pay one of his doctor's bills amounting to about $20. Respondent refused to do this unless appellant would sign a release, it having been reported that appellant intended to bring an action against him. Appellant refused to sign a release and was discharged, whereupon this action was brought to recover damages.

Appellant alleges the proximate cause of his injury to be the broken spring. He testifies that, when the horses started to run, the wagon struck against the curb of the street; that the seat fell, so that he had no way of bracing himself, and in consequence was thrown from the wagon. A verdict in favor of the appellant was rendered on the 13th day of January, 1915. The clerk made the following entry on his minute book:

"We, the jury in the case John Mattson plaintiff vs. Griffin Transfer Co. defendant, find for the plaintiff and against the defendant and assess his damages in the sum of three thousand one hundred and thirty-seven dollars ($3,137).

"Dated at Tacoma, Washington, this 13th day of January, 1915.          Chas. Zeigler, Foreman."

On the next day, respondent filed a motion for judgment *non obstante veredicto*, which was sustained by the court. Appellant contends, (a) that the motion for judgment *non obstante* came too late, and (b) that the court had no power

or jurisdiction to enter judgment *non obstante* after the return and recordation of the verdict. To sustain the first contention, appellant maintains that the entry of the verdict was an entry of a judgment under the statute, Rem. & Bal. Code, § 431 (P. C. 81 § 729), and that no motion other than a motion for a new trial could have been entertained by the court. He relies upon *Jensen v. Shaw Show Case Co.*, 76 Wash. 419, 136 Pac. 698; *Brown v. Walla Walla*, 76 Wash. 670, 136 Pac. 1166; *Forsyth v. Dow*, 81 Wash. 137, 142 Pac. 490, and *Paich v. Northern Pac. R. Co.*, 82 Wash. 581, 144 Pac. 919.

The power of the court to entertain a motion for judgment *non obstante veredicto*, if made before the entry of judgment, is now well settled. It is as well settled, and by the same authorities, that such motion cannot be invoked after the judgment has been entered. The entry of the verdict in the minute book and the journals of the court is not, of itself, an entry of judgment. The reception of a verdict and its entry is a thing entirely distinct from the rendition or entry of a judgment. The duty of the clerk of the court is defined by statute. He is required to keep a record of the proceedings of the court, and to receive the verdicts of the juries. Rem. & Bal. Code, § 77 (P. C. 127 § 53). In the same section the clerk is directed to keep a journal and to enter, under the direction of the court, all orders, judgments and decrees.

Although we have held that the entry of a judgment by the clerk under § 431 need not be a formal judgment, we have never held that the reception of a verdict is, in itself, an entry of judgment. That it is not, is implied, if not pronounced, in all of our decisions going to the question. In *Forsyth v. Dow, supra,* to which counsel directs our attention, the entry recited:

"The verdict is received and filed and judgment is hereby entered in accordance with the verdict in favor of the plaintiff and against the defendants in the sum of, etc."

In *Paich v. Northern Pac. R. Co., supra*, the verdict was received and filed and "judgment entered in favor of the plaintiff and against the defendant in accordance with the verdict." In each of these cases there was enough in the entry to show that the clerk had in mind the duty imposed by statute to enter a judgment and that he had done so.

In the instant case, the entry was no more than a formal recital of the reception of the verdict, as required by Rem. & Bal. Code, § 77 (P. C. 127 § 53). If we were to indulge in presumptions, keeping in mind the duty of the clerk as well as the discretion and power of the judge to control procedure and the records of the court, it would seem most likely that the entry of the judgment in this case was reserved under the direction of the court, for we have held, if the judge desires to reserve judgment, he may direct that it be "not presently entered." *Forsyth v. Dow, supra*. See, also, *Beck v. International Harvester Co.*, 85 Wash. 413, 148 Pac. 35. The entry relied on, as any entry of a judgment, did not bar the court from considering and passing upon the judgment *non obstante veredicto*.

The contention that the court's jurisdiction, after the reception of a verdict, is limited to the granting of a motion for a new trial is based upon the decision of the supreme court of the United States in the case of *Slocum v. New York Life Ins. Co.*, 228 U. S. 364, Ann. Cas. 1914 D. 1029. That court does not hold, indeed it expressly disavows any purpose to impress, the rule of that decision upon the state courts. We have no disposition to criticise the opinion of the majority of the court. We recognize it as a sincere and able presentation of the question then vexing and perplexing the judgment of the court. But it seems to us that the argument of Mr. Justice Hughes, with whom joined Justices Holmes, Lurton, and Pitney, is an unanswerable presentation of the true principles involved in the case. The argument of the majority (p. 369) is that the judge may direct a verdict at the close of the testimony, but if he take the verdict of a jury, he can-

not entertain a motion *non obstante veredicto*, although convinced that the verdict cannot stand for the want of sustaining fact, and that in no event can a judgment be entered upon the verdict. He must grant a new trial and, this being done, upon a retrial, he may grant a nonsuit or direct a verdict at any time before the case is submitted to the jury. This reasoning seems to us to be highly technical, circuitous, and "cumbrous" (p. 428). It compels unnecessary formality and possibly intolerable expense before the judge can say that there is no fact to sustain the verdict, or upon admitted facts, that the law will not tolerate a judgment. Justice Hughes so clearly points out that a motion *non obstante veredicto* and its consideration by the court is not an invasion of the province of the jury, that we will not pursue the inquiry, except to say that, under the practice prevailing in this state and elsewhere generally, the court may say, at any stage of the proceedings, that there is no evidence or reasonable inference from evidence to sustain a judgment.

"The motion for judgment notwithstanding the verdict invokes no element of discretion. It invokes the pure judicial functions of the trial court and of this court on review. It can only be granted when the court can say, as a matter of law, that there is neither evidence nor reasonable inference from evidence sufficient to sustain the verdict." *Brown v. Walla Walla*, 76 Wash. 670, 136 Pac. 1166.

We have persistently endeavored to impress the fact that a judgment *non obstante veredicto* cannot be resorted to where there is any element of judicial discretion, for if there be an element of discretion or any dispute of fact, the remedy is by motion for a new trial. This we suggested in *Forsyth v. Dow*. We quoted from *Auwarter v. Kroll*, 79 Wash. 179, 140 Pac. 326, where the court had rendered a judgment *non obstante veredicto*, and it appeared that there was a substantial conflict in the testimony. We said:

"We can divine no reason—certainly none is apparent in the record—for the order of the court, except that the judge

was of the opinion that the verdict was contrary to the weight of the evidence.   If so, his power was limited to making an order granting a new trial."

A like ruling was made in *Fobes Supply Co. v. Kendrick*, 88 Wash. 284, 152 Pac. 1028; *Walling v. Elbert*, 87 Wash. 489, 151 Pac. 1081; and in *Mathis v. Granger Brick & Tile Co.*, 85 Wash. 634, 149 Pac. 3.

The practice of submitting a case that has been tried out to the end, to the jury, although the court may be convinced that there is no fact to sustain a verdict, or that, upon the undisputed facts, a verdict will not stand, is not to be discouraged; nor is there any reasonable ground for holding that a court, having done so, has waived its judicial function—the power to say whether any lawful judgment can be entered upon an undisputed state of the record.

The province of the jury is to decide disputed questions of fact.   The function of the court is to pronounce the law where the fact is undisputed, or where there is neither evidence nor reasonable inference from evidence to sustain the verdict.   In holding to the rule of the minority in the case relied on, we adopt the words of Justice Hughes:

"We have here a simplification of procedure adopted in the public interest to the end that unnecessary litigation may be avoided.   The party obtains the judgment which in law he should have according to the record."   *Slocum v. New York Life Ins. Co.*, 228 U. S. 364, 428.

Upon the merits of the case, we are constrained to follow the judgment of the court below.   Many cases are cited, but they do not approximate the facts in this case.   Appellant was an experienced teamster.   He knew the danger complained of as well as the foreman, who, he says, promised to fix the spring after he returned from his trip.   The defect was open, patent, and obvious.   It is not the act of a reliance upon a promise to repair a defective appliance alone that creates a liability.   The promise must be for the benefit and assurance of the one using the appliance.   The promise

must have in it an element of coercion, arising in fact or implied in law, or partake of a character such as may be called in law "superior judgment." Upon a questioned state of facts, or upon a difference of opinion, "superior judgment" is always attributed to the master, as for instance, a promise to prop a mine or tunnel, or where the servant is using an instrument or machine which is a part of a mill, the movement of which is under the control of the master. However arising, the questions to be met in all cases where the defense of assumption of risk is tendered are: Was the defect complained of, open, obvious, and patent? Was the promise the inducement to continue at work, and did the servant act as a man of ordinary prudence under the circumstances?

These are the primary rules governing the defense of the assumption of risk. The instrument in this case was in the hands of appellant. There was no difference of opinion or in judgment. The probability of the seat falling, as distinguished from a possibility, was as well or better understood by appellant than by the foreman. After appellant had called the attention of the foreman to the defect, he went to his lunch, after which he started with his load. The promise, if made and performed, would have benefited him in no way, or if performed, it would not have tended to his protection in any degree. He admits his habit and ability to make slight repairs in the course of his employment. It would seem that, if the danger was really imminent, a prudent man would have insisted upon an immediate repair, or would have twisted a wire around the front end of the spring and made it temporarily secure, as the back end had been made secure by a like method.

That a workman using and having control of a simple instrument "presenting no complicated question of power, motion or construction" (*Cole v. Spokane Gas & Fuel Co.*, 66 Wash. 393, 119 Pac. 831), and having knowledge of a defect requiring attention, is put to some care to protect him-

self, is held in *Greinert v. Lamont Inv. Co.*, 76 Wash. 82, 135 Pac. 817. There the workman was charged with the duty of forming a proper loop so that it would hold blasted material which he was hoisting from a well. We said:

"Every one knows that such a loop could have been safely formed by any one of a number of simple knots, and when respondent found that the loop in use refused to hold, the exercise of ordinary care on his part required that he form the loop in a more secure way."

So, in this case, it would seem that respondent, intending to use the wagon for one trip only, should have exercised ordinary care to the extent of tying a rope or wire around the loose end of the spring; for it is held in all the books that a promise to repair does not relieve the servant of the duty to exercise due and reasonable care under the circumstances. *Trudeau v. American Mill Co.*, 41 Wash. 465, 83 Pac. 725.

The obvious fact that a broken seat spring is a simple instrument is indicated in *Bougas v. Eschbach-Bruce Co.*, 77 Wash. 347, 137 Pac. 472, where, after noting many things, we likened a clamp and key to ordinary tools and implements used upon the farm, "such as lines, tugs, neck yokes, double trees, lead bars, lead chains, clevises, brake rods, etc."

We have not overlooked the attempt of appellant to inject the element of coercion into the promise to repair. When asked what would have happened if he did not do as he was told to do, he said, in substance, if he had not done so he would have been "fired"; that all the workingman can do is to obey orders or quit work. It might be that, in some cases, this would be sufficient, but it surely is not enough to bring appellant within the rule where there is neither testimony nor circumstance to sustain his conclusion.

We find no legal ground to rest the verdict upon. The judgment *non obstante veredicto* is affirmed.

MORRIS, C. J., MOUNT, ELLIS, and FULLERTON, JJ., concur.