[No. 22782.   Department Two.   January 20, 1931.]

CLIFFORD L. SAMUELSON, *Respondent*, v. W. A. TAYLOR
*et al., Appellants.*[1]

[1]Reported in 295 Pac. 113.

370

*E. E. Wager* and *Grady & Velikanje,* for appellants.
*Snively & Bounds,* for respondent.

BEALS, J.—Plaintiff, a young man of about twenty years of age, a student in attendance at the state normal school at Ellensburg, having been suffering some inconvenience in reading, due, as he thought, to eye strain, during the month of January, 1929, visited the clinic maintained by defendants, who are regularly licensed physicians and surgeons, for the purpose of having his eyes examined, he being of the opinion that it was probable that glasses would materially assist his vision and relieve the annoyance from which he was suffering.

The nurse in charge of defendants' office referred plaintiff to defendant Dr. Frank I. Putnam, who, for over twenty years, had specialized in matters pertaining to the eye, ear, nose and throat. On the occasion of plaintiff's first visit to defendants' clinic, Dr. Putnam examined his eyes, made visual tests with lenses and, also, a rhinoscopic examination. The doctor told plaintiff that, in order to make a thorough examination, it would be necessary to dilate the pupils of the eyes, in response to which plaintiff stated that he did not wish that done, at least at that time, whereupon the doctor told plaintiff to return the next morning.

Plaintiff, accordingly, presented himself at the doctor's office on the following morning, reporting to the nurse in charge, who sent him to Dr. Putnam's room, telling him that the doctor was ready for him. According to plaintiff's story, as narrated on the witness stand during the trial, Dr. Putnam met plaintiff at the entrance to the doctor's private office, invited him in, and told him to sit down in a certain chair, which was not the chair plaintiff had occupied during the

examination on the previous evening. Plaintiff testified that the doctor then, without asking any questions whatsoever or making any examination, proceeded to wash out plaintiff's right antrum, after using a local anaesthetic.

Plaintiff states that, after this was done, the receiving nurse in charge of the reception room entered the office, and Dr. Putnam asked her if there was any other patient waiting for attention, to which she replied in the negative. The doctor then stated that he was expecting "that young fellow from the normal school," whereupon plaintiff remarked that he was Samuelson. According to plaintiff's testimony, the doctor then said, "Gosh, I thought your name was Gilmore," and directed plaintiff to change his seat to another chair, after which the doctor treated plaintiff's eyes with some liquid. After making reading tests, the doctor then said, "Why, you don't need glasses; you come back at nine o'clock Monday," and, during the conversation, remarked with a chuckle, "At least, we know your antrum is clear." Plaintiff reported to the doctor on Monday at the designated time, and, after some delay, saw the doctor, who, again, told him he did not need glasses, after which, it was agreed that plaintiff should pay two dollars, instead of five, as first demanded by the doctor, for the attention which he had received.

Thereafter, plaintiff became ill and suffered great pain in his head, he testifying that, upon consulting another surgeon, his right antrum was again opened and found to contain dark blood clots and pus, foul and bad smelling, the removal of which caused him some very temporary relief. Plaintiff stated that he, later, became very sick, and that he was taken to Seattle, where he remained some time in a hospital, dangerously ill and suffering severe pain.

Plaintiff sued defendants for damages, suffered by reason of his illness, alleging in his complaint that Dr. Putnam had wrongfully and unnecessarily opened and washed his right antrum, under the mistaken impression that plaintiff was, in fact, a patient of the doctor's named Gilmore, and that, by reason of the opening of his right antrum, and the work done thereon by the doctor, the antrum had become infected, with the result that plaintiff had been rendered ill and had suffered great pain over a considerable period of time. Defendants Taylor and Richardson were joined as defendants, under an allegation that they were associated in business with Dr. Putnam. The issues being made up, the action was tried to the court, sitting with a jury, which rendered a verdict in plaintiff's favor. From a judgment entered upon this verdict, defendants appeal.

No error is assigned upon the admission or rejection of evidence. Appellants contend that the court erred in giving the jury certain instructions, in refusing to give one instruction proposed by appellants, in denying appellants' motions, first, for a directed verdict, second, for judgment in their favor notwithstanding the verdict, and, finally, for a new trial.

Appellants contend that the theory of respondent's case, as disclosed by his complaint, was that Dr. Putnam, mistaking respondent for another of his patients, opened and washed respondent's antrum without his consent, and that, as this operation was not contemplated in the course of the treatment for the ailment concerning which the doctor had been consulted, and was unnecessary, appellants were liable to respondent upon some ground analogous to that of trespass or assault. Appellants contend that there was no mistake in identity whatsoever, and that the treatment administered by Dr. Putnam was necessary, usual and

proper, that the work was performed skillfully and efficiently, and that respondent's subsequent illness was due either to the operation thereafter performed upon respondent by another surgeon, who, as above stated, washed respondent's antrum, or to some extraneous cause, concerning which appellants had no information, and for which they were nowise responsible.

Appellants contend that the court erred in denying their motions for a directed verdict, and later, for judgment in their favor notwithstanding the verdict, contending that the evidence fails to disclose any mistake on the part of Dr. Putnam, or any negligence or malpractice whatsoever on the doctor's part. The record in the case is voluminous, much testimony having been introduced on behalf of each side. Several eminent surgeons testified on behalf of appellants, to the effect that the treatment given plaintiff by Dr. Putnam was proper and usual in the course of such an examination and diagnosis as respondent had requested the doctor to make, and that respondent's subsequent illness was due to some cause for which appellants were nowise to blame. Dr. Putnam testified that, when he first examined respondent, he decided to wash the antrum, and so informed respondent when he instructed respondent to return the next morning.

Appellants argue that, even though Dr. Putnam, when he washed respondent's antrum, was under the mistaken impression that respondent was, in fact, the doctor's patient Gilmore, this fact would not render appellants liable to respondent, unless Dr. Putnam had been, in some manner, negligent, and respondent had suffered damage because of such negligence. Appellants vigorously contend that the evidence conclusively shows that no act of Dr. Putnam resulted in injury or damage to respondent, and that any damage he sus-

tained was due to some cause for which appellants are not liable.

A surgeon, consulted by respondent approximately two weeks after the washing of his antrum by Dr. Putnam, testified that, when he opened respondent's antrum, he found the same in very bad condition, and that, in his opinion, respondent's later illness resulted from infection spreading therefrom. Appellants argue that this testimony must be looked upon with the gravest suspicion, because the witness was a surgeon of limited experience as an occulist, and because appellants contend that the record shows that the witness entertained ill feelings towards them. It is, also, argued that the witness had an interest in the subject matter of the litigation, because it might be contended that it was his treatment which had rendered respondent sick, and that he might, at some later date, be called to account therefor. Appellants appeal to the list of distinguished physicians and surgeons who testified on their behalf, and insist that it should be held, as matter of law, that some of the motions interposed by their counsel should have been granted, and judgment rendered by the court in their favor.

We cannot agree with appellants in any of their contentions. An extended review of the evidence would not be profitable. Respondent testified as to certain statements made by Dr. Putnam, and as to occurrences in the doctor's office, the doctor's testimony concerning the same matters being radically different. As to these controversies, the verdict of the jury is conclusive. As above stated, several expert witnesses testified on behalf of appellants, and, while appellants' expert witnesses exceeded, in number, those who testified on behalf of respondent, it cannot be held, as matter of law, that the jury, for that reason, were bound to accept appellants' theory of the

case and reject that of respondent. Respondent's counsel argue that the jury may have believed, from the testimony of some of appellants' own expert witnesses, that the washing of respondent's antrum, at the time and under the circumstances the operation was performed, was not a necessary part of such an examination, for purposes of diagnosis, as Dr. Putnam had been called upon to make.

It is not for an appellate court to weigh and consider the testimony, from the standpoint of a trier of the facts. We are satisfied that the record before us contains testimony which, if believed by the jury, as it evidently was, supports the verdict. The evidence was conflicting, and presented a controversy which was properly submitted to the jury for determination. We are satisfied that appellants, at no stage of the proceeding, were entitled to judgment in their favor, as matter of law.

The supreme court of Oregon, in the case of *Gill v. Selling,* 125 Ore. 587, 267 Pac. 812, held the defendants, who were physicians and surgeons, liable in damages to one upon whom the defendants performed a spinal puncture, under the mistaken belief that the plaintiff was another patient of the office, in whose case that treatment was necessary. In the case cited, it was admitted by the defendants that a mistake in identity had been made, and that no spinal puncture was necessary in the case of the plaintiff. In the case at bar, appellants contend that the washing of respondent's antrum by Dr. Putnam was proper and necessary, and that the doctor made no mistake in respondent's identity, but did for respondent exactly what the doctor intended to do. This, however, was, under the testimony, a question of fact to be determined by the jury from all the testimony, and, the jury having found against appellants, some of the language of the su-

preme court of Oregon contained in the opinion in the case cited becomes applicable.

This court, in the case of *Stickney v. Congdon,* 140 Wash. 670, 250 Pac. 32, an action by a patient against a physician, used the following language:

"We have many times held that a judgment notwithstanding a verdict will be granted only when the court can say, as a matter of law, that there is neither evidence nor reasonable inference from evidence sufficient to sustain the verdict. *Brown v. Walla Walla,* 76 Wash. 670, 136 Pac. 1166; *Fobes Supply Co. v. Kendrick,* 88 Wash. 284, 152 Pac. 1028; *Mattson v. Griffin Transfer Co.,* 90 Wash. 1, 155 Pac. 392."

The court held that it was for the jury to determine whether or not a burn, suffered by the plaintiff while being subjected to the action of an X-ray machine, had or could have been caused by an alleged fluctuating current, and, if such a current existed, whether or not appellants had been negligent in using the same. In that case, as in this, the testimony was in conflict, and it was held that the questions of fact referred to in the opinion should properly be determined by the jury.

Appellants assign error upon several instructions which were given to the jury by the trial court, arguing, in the first place, that four of these instructions were misleading and not applicable to the facts, in that they refer to a possible mistake in the identity of respondent on the part of Dr. Putnam. Appellants contend that all of the physicians who testified agreed that a proper part of the diagnosis to be made by Dr. Putnam consisted of the washing of respondent's antrum, and, from this, appellants argue that, if there was no dispute in the testimony as to the necessity of such an operation, it was immaterial whether Dr. Putnam thought he was washing Mr. Gilmore's an-

trum, or that of respondent. Appellants argue that, by the instructions, the court told the jury that a mistake, made by Dr. Putnam as to the identity of his patient, might of itself afford a basis for liability on the part of appellants, irrespective of whether or not Dr. Putnam would have administered exactly the same treatment to respondent that he did administer, had he not made the mistake of believing that respondent was his patient Mr. Gilmore.

We do not so understand the instructions. It is doubtless true that, if Dr. Putnam would have washed respondent's antrum as he did, had he recognized respondent as Samuelson, the mere fact that Dr. Putnam mistook respondent for another of his patients would not, of itself, afford a basis for liability on the part of appellant, but, as we read the evidence, the same presents a conflict, not only as to whether or not Dr. Putnam mistook the identity of his patient, but also upon the question of whether or not the doctor would have performed such an operation upon respondent, had he recognized respondent as Samuelson, and not mistaken him for Gilmore. Upon this, as upon other questions, appellants' argument appears to be a strong argument upon the facts, and one which might well have won a verdict at the hands of the jury, but it is not such an argument as is convincing to an appellate court, whose function it is to consider an appeal from a judgment entered upon the verdict of a jury, rendered on disputed facts.

Appellants also contend that there is nothing, at all, to indicate that any infection of respondent's antrum was due to the treatment of respondent by Dr. Putnam. It is, of course, true that respondent's testimony does not amount to a demonstration, but, on the other hand, this testimony does, in our opinion, afford a sufficient basis for the verdict of the jury. As is

often the case, the testimony was in direct conflict, but we cannot hold that it so greatly preponderates in appellants' favor as to require the setting aside of the verdict.

■ Appellants also assign error upon the refusal of the trial court to give to the jury appellants' proposed instruction number two, which was submitted to the trial court and refused. Examination of the requested instruction convinces us that the subject matter of the proposed instruction was fairly included within those which were given, and that the refusal of the trial court to give the instruction requested by appellants does not constitute reversible error.

■ Appellants finally contend that the verdict of the jury, which was in the sum of five thousand dollars, is excessive. Respondent testified that he suffered pain almost continuously, from the date of the washing of his antrum by Dr. Putnam until January 25, when the antrum was opened and rewashed by Dr. McCormack. A few days after this, respondent was taken to Seattle, where he was cared for in a hospital until February 13, when he returned to Ellensburg. Upon his return, he was taken to the hospital maintained by appellants, where he remained until February 21, when he was removed to the infirmary maintained in connection with the normal school, where he was cared for until March 2. There can be no question but what respondent was very ill at, and after, the time he was removed to Seattle. It appears that respondent, when he was finally discharged from the infirmary, was very weak, had lost much weight, and, up to the time of trial, at least, was unable to do anything requiring sustained effort. He testified that he suffered from headaches, and had little of his former energy. There is testimony in the record which may have convinced the jury that respondent's complete

recovery may be long delayed. While the verdict is substantial, we are unable to hold that under the rules of law applicable it should be reduced.

Judgment affirmed.

MITCHELL, FULLERTON, MILLARD, and MAIN, JJ., concur.