[No. 11037. Department Two. October 18, 1913.]

AUGUST GREINERT et al., Respondents, v. LAMONT INVESTMENT COMPANY et al., Appellants.[1]

MASTER AND SERVANT—DEFECTIVE APPLIANCES—CONTRIBUTORY NEGLIGENCE. The master is not liable to an employee, digging a well, who disregarded instructions to hoist excavated material in a bucket, but hoisted pieces of rock tied to the rope, which thereby became wet and worn, of which he alone had notice, so that the hook did not grip as it did before, but slipped and caused him to fall when being raised from the well.

SAME—SAFE APPLIANCES—SIMPLE DEVICES. An employee digging a well, who fell when being raised because a loop in the rope, formed in a particular way, slipped and left his foot without support, cannot recover because of failure to furnish safe instrumentalities for the work; since the loop could be safely formed in a number of simple ways as well known to the servant as to the master.

SAME—SAFE APPLIANCES—CONTRACT—DUTY TO PROVIDE. One hired to dig a well and sent to the place with the statement that a third person would get him "anything he needed," cannot complain of the devices adopted for hoisting; since, if he chose to adopt the devices already installed, he made them his own.

SAME—PROXIMATE CAUSE. Negligence of the master in failing to provide a new bucket to hoist excavated material from a well is not the proximate cause of the accident, where an employee was injured when a loop in the rope slipped as he was being hoisted from the well.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered October 6, 1912, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for

[1]Reported in 135 Pac. 817.

personal injuries sustained by an employee engaged in excavating a well.   Reversed.

*Voorhees & Canfield,* for appellants.

*J. Milton Collins,* for respondents.

FULLERTON, J.—The respondents recovered a judgment against the appellants for personal injuries received by the respondent August Greinert while in the employment of the appellant Lamont Investment Company.

The Lamont Investment Company is a public service corporation engaged in supplying the town of Lamont with water.   The appellant Dan Morgan is its president.   The corporation, to procure a supply of water, drilled a well near the town of Lamont, and sought to case it by driving casing into the drilled hole.   A piece of the casing thus driven split in some manner and became fastened in the well, so that it was found impossible to remove it by pulling it out.   It thus became necessary to dig around the casing down to the split in order that the breach caused thereby could be repaired.   The split occurred in solid rock beneath some 43 feet of earth. The appellant employed one Bollinger to excavate through the earth to the solid rock.   A chamber, 17 feet square and 10 feet deep, was first dug and lined with cement.   Beneath this chamber a pump shaft, 7 feet square and 14 feet deep, was then dug and cemented in like manner.   Then from the bottom of this shaft a circular well, 4 feet in diameter, surrounding the casing as a center, was dug down to the solid rock, a distance of 19 feet.   The well was in this condition when the respondent August Greinert was employed to complete the excavation necessary to repair the casing.   Mr. Bollinger, for his own purposes, had constructed an ordinary windlass which he placed across the top of the well.   To this he fastened one end of an inch rope which had on the other end a No. 8 iron grab hook.   In hoisting excavated material from the well, Bollinger used an ordinary bucket having a bail, which he attached to the rope by hanging the bail onto the hook.   When

having himself lowered into or raised out of the well, he formed a loop in the rope some 14 or 18 inches long by inserting the rope into the grab hook, into which loop he would place his foot, and by resting his weight thereon and standing upright along the side of the rope and steadying himself by holding on thereto, could be lowered or hoisted at his pleasure by helpers operating the windlass. The whole contrivance was of Bollinger's own construction; neither of the appellants suggesting its construction or the manner of its operation.

The contract of hire between the parties to this action was made by the appellant Morgan and the respondent August Greinert. The contract was made in Spokane, which is some 40 miles from the place of the work. The respondent testifies that Morgan told him to take a helper with him skilled in rock work and go to the place of the work and complete the necessary excavation; that he would find Morgan's son at the well who would get him "anything he needed" to enable him to perform the work. He testifies further that while he "understood perfectly powder and drilling," that he did not understand well-digging; that his work theretofore in that line had been performed in trenches and manholes not more than 8 or 9 feet deep, and that he so informed Morgan, and was assured by him that there was no particular danger in this work.

On arriving at the well with his helper, the respondent found Bollinger and Morgan's son there. The windlass and its accessories were also in place, and these were adopted by the respondent as sufficient for his own purposes. Bollinger and the son of the appellant Morgan showed the respondent how they had used the appliances, Bollinger making the loop in the rope as he was accustomed to make it, for the respondent's instruction. Both Bollinger and the respondent descended into the well, when the respondent looked it over with a view of ascertaining whether it would stand the explosion of the blasts necessary to remove the rock. Satisfying him-

self on this score, he was hauled to the surface, and on the next day began sinking the well through the rock, his helper working with him at the bottom of the well, while Morgan's son and another person operated the windlass. The work continued for some five days, during which time the respondent was repeatedly lowered into and raised out of the well, using the rope and windlass in the manner they were formerly used by Bollinger. The rope, however, seems not to have remained in the same condition it was left by Bollinger. Many of the pieces of rock torn loose by the blasts were too large to go into the bucket, and these the respondent, rather than break them into smaller pieces, tied to the rope and had them hauled out without the aid of the bucket. The result was that the rope became wet and worn so that the hook did not grip the rope with the same security that it did originally; as the respondent testified: "it oftentimes would slip a little when you would step into it; it slipped with me one time and it catched over my instep here, but I did not pay any attention to it because the hook did not come unhooked, it stayed on." Sometime on the fifth day, the respondent desiring to be hoisted out of the well, formed a loop in the end in the manner shown him by young Morgan and Bollinger, put his foot into the loop, and gave the signal to hoist. After it had been raised some distance, the hook in some manner slipped from the rope, disengaging the loop, and leaving his foot without support. The result was that he fell back into the well and was injured. He conceived that his injury was the result of negligence on the part of the appellants, and this action was brought to recover therefor, with the result before stated.

It seems to us that there was here no ground for a recovery, and that the court should have sustained the challenge of the appellants to the sufficiency of the evidence. Conceding all that the respondent claims, namely, that the device was one furnished him for use by the appellants for the safety of which they were responsible, and that the instructions given him as to the manner of its use by Bollinger and

Morgan's son were instructions of the appellants, still there would be no liability for this particular mishap. If it were the appellants' device and the instructions as to its use were the appellants' instructions, the appellants' liability attached only in the case the device was used according to the instructions, and the respondent did not so use them. He was instructed to remove the material loosened by the blasts by putting them into the bucket and hoisting them out of the well by hooking the rope to the bail of the bucket. This instruction he disobeyed. When the pieces were large, he fastened them, as we have said, to the rope direct and removed them in that manner. The result was an injury to the rope, so that the hook would not retain its grip upon it when the loop was formed. Of this fact the respondent, in so far as the evidence discloses, is the only person who had any knowledge. He knew, while the appellants did not know, that the hook would no longer hold securely to the rope, and it was his duty, if he wished to charge the responsibility therefor to the appellants, to notify them of its changed condition and ask that it be corrected.

But we think the particular device that caused the injury does not fall within the rule of safe instrumentalities. There was nothing magical about the manner in which the loop in the rope was formed. The loop itself was the thing desired, and its formation in some other manner than the particular way directed would have answered the required purposes equally well. Every one knows that such a loop could have been safely formed by any one of a number of simple knots, and when the respondent found that the loop in use refused to hold, the exercise of ordinary care on his part required that he form the loop in a more secure way. Had his employers been present they could have had no more knowledge of the conditions than he himself possessed, and surely they are not liable to him because they failed to be present, or have some one present, to tell him what he not only actually knew but

was bound to know, namely, that the loop as he formed it had become unsafe.

"The rule seems well established that an implement of simple structure, presenting no complicated question of power, motion or construction, and intelligible in all of its parts to the dullest intellect, does not come within the rule of safe instrumentalities, for there is no reason known to the law why a person handling such instrument and brought in daily contact with it should not be chargeable equally with the master with a knowledge of its defects. *Cahill v. Hilton,* 106 N. Y. 512, 13 N. E. 339; *Marsh v. Chickering,* 101 N. Y. 396, 5 N. E. 56; *McMillan v. Minetto Shade Cloth Co.,* 117 N. Y. Supp. 1081; *Wachsmuth v. Shaw Elec. Crane Co.,* 118 Mich. 275, 76 N. W. 497; *O'Brien v. Missouri, K. & T. R. Co.,* 36 Tex. Civ. App. 528, 82 S. W. 319; *Holt v. Chicago, M. & St. P. R. Co.,* 94 Wis. 596, 69 N. W. 352; *Stirling Coal & Coke Co. v. Fork,* 141 Ky. 40, 131 S. W. 1030; *Jenney Elec. L. & P. Co. v. Murphy,* 115 Ind. 566, 18 N. E. 30." *Cole v. Spokane Gas and Fuel Co.,* 66 Wash. 393, 119 Pac. 831.

Again, we think, under the respondents' statement of the contract of hire, the respondent was himself to select the necessary instrumentalities with which to perform the work. He testified that the appellant Morgan told him he would find his [Morgan's] son at the place of work, who would get him "anything he needed" with which to perform the work. If, therefore, the respondent chose to adopt the device he found at the well instead of putting in his own, they became his own devices and not those of the appellants.

Some question is made concerning a new bucket which the respondent desired and which was not furnished on the day the same was requested. But the failure to furnish the bucket had nothing to do with the respondent's injury. He fell from the rope after the bucket had been removed therefrom, not from the bucket itself. Negligence to be actionable must be the proximate cause of the injury, and the failure to get a new bucket was not the proximate cause of the injury in this instance.

The judgment is reversed and remanded with instructions to dismiss the action.

CROW, C. J., MAIN, ELLIS, and MORRIS, JJ., concur.