13342

FIELDS v. TEXAS COMPANY *ET AL.*

(162 S. E., 441)

*Messrs. Huger, Wilbur, Miller & Mouzon,* for appellant,

*Messrs. A. Russell McGowan* and *W. D. McGowan,* for respondent,

February 2, 1932.

The opinion of the Court was delivered by Mr. Justice Stabler.

This is an action for damages for personal injuries, the sixth paragraph of the complaint being as follows: "That heretofore, to wit, on or about the 22nd day of November, 1929, the plaintiff herein while working as an employee of the defendant, The Texas Company, and while working under the direction, supervision, control and instructions of his manager and foreman, B. H. Gray, attempted to raise a container of aluminum primer by means of a manila rope running through a pulley from the floor of one of The Texas Company's store rooms to the upper loft or shelf of the said store room, preparatory to taking an inventory, when suddenly and without warning after this plaintiff had succeeded in raising the said container a distance of about twelve or fifteen feet from the floor, by and through the carelessness, recklessness, willfulness, wantonness and negligence of the said defendants, their agents and servants, the said manila rope broke, parted and unraveled, causing this plaintiff to be violently thrown backwards upon, against and over and into a heavy, metal container, painfully and seriously and permanently injuring him in his back and body and otherwise injuring him in his person."

The following are some of the specified acts of negligence and willfulness, to which the plaintiff alleges his injuries were due: Failure of the defendants to properly supervise and direct the work which the plaintiff was ordered to do, and to furnish a reasonably safe place for doing it; furnishing the plaintiff with a defective rope and appliance with which to do the work assigned him, which they knew or should have known were defective and liable to injure him in his person, without warning him of the defective appliance and the danger incidental to its use; and failing and omitting to cause the rope to be inspected for defects before issuing it for use by the plaintiff.

The defenses were a general denial, contributory negligence, and assumption of risk.

The case was tried at the February, 1931, term of Court of Common Pleas for Charleston County. The defendants' motions for a nonsuit and for a directed verdict were overruled, and the jury found for the plaintiff $2,000.00 actual damages.

One of the grounds of the motion for a nonsuit was that the rope alleged to have been defective was a simple tool, which the defendants were not obligated to inspect. The trial Judge, in refusing the motion, said: "On this proposition of the tool doctrine I think that is involved whether a rope comes under the category of a simple tool and I think that must depend upon the circumstances under which it is being used. Your proposition about the simple tool doctrine is all right  *   *   *   and yet I can't say that a rope used as this was, for the purposes this was, would come under the category of the simple tool doctrine."

It does not appear that this Court has ever considered, with reference to a rope, the question here presented. It has, however, several times approved the simple tool rule and applied it to a number of devices.

In *Richardson v. Union Seed & Fertilizer Co.*, 111 S. C., 387, 98 S. E., 134, a case in which the plaintiff was injured through using a defective paint brush, the Court held: "The paintbrush was an instrumentality of simple character different in character with complicated machinery, and the duties of the master in regard thereto are not so strict."

In *Evatt v. Piper Roofing Co.*, 128 S. C., 390, 123 S. E., 203, the Court held that a pair of pliers, used to knock out a broken hammer handle, under the facts there shown, was a simple tool.

*Roper v. Ware Shoals Manufacturing Co.*, 139 S. C., 48, 137 S. E., 210, was a case in which the plaintiff was injured by the fall of a stepladder on which he was standing. The facts were that the plaintiff himself had charge of the ladders from which he selected the one which caused his in-

jury, and that he was not only familiar with the ladders, but made them. He had, however, asked for and had been promised a new ladder three days before the accident. The Court held: "Under the testimony here, we think the trial Judge was right in holding that an ordinary stepladder comes within the 'simple tool doctrine,' and that he was right in granting the nonsuit."

We have examined the two cases cited by the appellant in which a rope, being used for certain purposes, was declared to be a simple tool within the meaning of the rule. The first of these, *Greinert v. Lamont Inv. Co.,* 76 Wash., 82, 135 P., 817, 818, was a case in which a rope was being used for lowering or raising an employee excavating in a well. "When having himself lowered into or raised out of the well, he formed a loop in the rope some 14 or 18 inches long by inserting the rope into the grab hook, into which loop he would place his foot, and by resting his weight thereon, and standing upright along the side of the rope, and steadying himself by holding on thereto, could be lowered or hoisted at his pleasure by helpers operating the windlass."

The Court held that there was nothing magical about the manner in which the loop in the rope was formed, and that when the employee found that the loop in use refused to hold he should have formed it, in the exercise of ordinary care, in a more secure way; that the rope was an instrumentality of a simple nature, and that if the master had been present he would have had no more knowledge of the situation than the employee himself possessed. The employee, having disregarded the instructions given him and thereby rendered the device defective, and alone having knowledge of such defect, could not recover from the employer.

*Isaacson v. Wisconsin Telephone Co.,* 138 Wis., 63. 119 N. W., 804, was a case in which the company furnished its operator and his assistant a platform four feet square, with a rope eight feet long through each corner thereof, fastened to projections from an overhead pole. The men stood on this platform to work. After the ropes had been in their posses-

sion for three months, and while they were being so used, one of them parted, precipitating the men to the ground. The Court held that the rope so used came within the simple tool rule, and that as it had proved sufficient for several months, during which time there had necessarily been some wear and impairment, the employees were in a better position than any one else to observe and detect any defect in it. In view of the fact that the ropes had been in the possession of and had been used by the two men for so great a length of time, the Court did not consider whether an original insufficiency of such a simple and commonly known article would cast liability on an employer.

In a note to *Vanderpool v. Partridge,* a Nebraska case, at the foot of pages 668 and 669, of 13 L. R. A. (N. S.), the annotator says:

"The rule of *respondeat superior* rests upon the assumption that the employer has a better and more comprehensive knowledge than the employee, and therefore ceases to be applicable where the employee's means of knowledge of the danger to be incurred is equal to that of the employer. Such is the case where the instrument or tool, the defect in which is the cause of the injury is of so simple a character that a person accustomed to its use cannot fail to appreciate the risks incident thereto.

"The mere simplicity of a tool, as is apparent upon consideration of the basis above stated of the rule of *respondeat superior,* will not exempt the master from all care, or relieve him from liability under all circumstances; but the capacity, intelligence, and experience of the servant, the character of the defects, his opportunity for detecting them, his situation and the circumstances calculated to withdraw his attention from them, as well as the fact that the servant has a right to rely upon the master to protect him from danger and injury, and in selecting the agent from which it may arise, are factors of varying importance, which must also be taken into account."

In the case at bar there was testimony to the effect that the respondent, at the time he was injured, was in the employ of the appellant The Texas Company, and working under the direction of the defendant Gray, who was "in charge of the Texas plant"; that the respondent had worked for the oil company for more than five years as stenographer, but at the time of the accident held the position of "cost clerk" and as such had "charge of all accounting and the store room"; that he was "advised by Mr. Gray to get the store room clean to take the inventory;" and that to do so it was necessary to move some fifty containers of paint and aluminum primers, which weighed from fifty-two to eighty-two pounds each; that on Thursday, November 21, 1929, he requested Smith, the yard foreman, to furnish him two laborers to help do the work, and on the morning of the 22d was given one laborer only, Robert Davis, a negro; that they started to move the containers to the loft of the room, twelve or fifteen feet above, by carrying them up steps unprotected by banisters, but this method was found to be unsatisfactory and dangerous, so that, when the respondent advised Gray of that fact, he suggested that the containers be pulled up by a rope; that, following this suggestion, respondent sent Davis to the tool room to get a rope, this room being nearby and in charge of another employee of the company; that a three-quarter inch manila rope and a pulley were secured, and the pulley was fastened to the rafters, the rope passing through it and extending to the floor below; that at one end of the rope there was a noose, made by a splice wrapped with a fishing cord, and that the noose was used on the outside edge to keep the rope from coming back through the pulley; that the splice was not used for tying a knot, but was a part of the knot on the handle of the bucket; that in doing the work the negro was stationed in the loft to receive the containers and stack them away, while the respondent remained on the floor, where, with a single or double knot, he fastened the noose end of the rope in turn

to the handle of each container, which he then hoisted to Davis; that, when one of the last of the containers was being pulled up by the respondent, the rope parted or broke at the noose, releasing the container, and the respondent was thereby precipitated to the floor and injured. Fields testified that he then examined the rope and found near the noose a rusty spot, evidently caused by something it lay on in the tool room, and that so far as he knew this was the cause of the defect; that the defect was underneath the fishing cord where the rope was wrapped, where the noose had been made just at the end of it; that it could have been detected, he imagined, by close examination, and that possibly he could have seen it if the rope had been taken outside, where there was plenty of light, but it could not be seen in the dark tool room; that the ropes in the tool room were supposed to be in good condition, as Gray and Smith had inspected everything in that room about two months before, and that he knew of the inspection and trusted it to be all right. He further testified that the rope parted about an inch and a half from the handle of the container to which it was tied; and that it was the splice that broke, causing the knot to slip and letting the bucket fall; that the part that made the noose was in two pieces; and that he did not examine the rope before he began to use it, as it was supposed to be a good rope. The defendant Gray testified that they had a particular man in charge of the tool room who gave out to each employee the tools that he needed, and that an employee was not supposed to use any others; and that the tools were frequently inspected and were checked at least every month and a half. It appears that after the accident no one except the appellant had an opportunity to examine the rope, as he testified that he threw it over the fence and it was never found.

A careful consideration of the testimony convinces us that the trial Judge committed error in holding that the rope used would not come, under all the facts and circumstances of the case, within the simple tool rule,

and in refusing to grant a nonsuit on that ground. A rope is simple in character, one of the simplest and most commonly known of articles, and the fact that it was being used in connection with and by being passed through a pulley did not alter its nature. It is true that the mere simplicity of a tool will not exempt the master from liability under all circumstances. However, it does not seem to us that the circumstances in the case at bar are such as to create an exception. The testimony shows that the respondent was a man of intelligence and experience, and had full opportunity to examine the rope for any defect; and while it seems that the tool room in which it was kept was too dark for proper inspection, it does not appear that such condition existed in the room where it was being used, but even if such condition prevailed there, the respondent could have examined it by taking it out into the light nearby. In a report of the accident to the company, it was stated, as coming from respondent, that the "end of the rope unraveled causing the noose to slip"; on trial of the case several explanations were made by respondent as to how and where the rope broke. It is admitted, however, that the respondent himself tied the same end of the rope to the handle of each of fifty heavy containers and hoisted them to the loft, using the rope in this manner for nearly two hours; it is evident that if that end of the rope became raveled or impaired, from such use, at the point where it was repeatedly tied or knotted, as was likely to happen, respondent could have more easily detected it under the circumstances than any one else. If the master had been present, he could have known no more about the condition of the rope or the alleged defect in it, and would have had no more opportunity for doing so, than the respondent himself. Further, it does not appear that there were any circumstances to distract respondent's attention from the defect in the rope, if there was one. Certainly, respondent being a man of intelligence and experience, and the rope being a tool of simple character, he could not fail to ap-

preciate; under the circumstances, the risk incident to its use in hoisting the containers.

The judgment of the Circuit Court is reversed, and the case remanded, with instructions that a nonsuit be entered up for the defendants under Rule 27 of this Court.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.

MR. JUSTICE COTHRAN did not participate on account of illness.